# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-2007

REGIS M. QUIRIN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided March 10, 2009)

*Ronald L. Smith*, for *Disabled American Veterans*, of Washington, DC, was on the brief for the appellant.

*Keturah Denise Harley*, with whom *Paul J. Hutter*, General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before MOORMAN, LANCE, and SCHOELEN, *Judges*.

LANCE, *Judge*: The appellant, Regis M. Quirin, appeals through counsel a May 10, 2006, decision of the Board of Veterans' Appeals (Board) denying entitlement to service connection for optic atrophy under 38 U.S.C. § 1131. The parties each filed briefs and the appellant filed a reply brief. For the reasons that follow, the Court will vacate and remand the May 10, 2006, Board decision.

## I. FACTS

The appellant served in the U.S. Army from January 1953 to March 1955. Record (R.) at 12. In April 1951, 21 months prior to his enlistment, he reported for an Armed Forces Physical Examination and was "FOUND ACCEPTABLE FOR INDUCTION." R. at 15. All of his

1

subsequent service medical records (SMRs) were destroyed, except for a March 1955 examination. R. at 32-33, 35. That examination, conducted one day prior to his separation from service, indicates that the appellant wore glasses, that he had uncorrected distant vision of 20/60 in his right eye and 20/100 in his left eye, and that he had corrected distant vision of 20/60 in both eyes. R. at 18. No other "serious injuries, operation, or diseases" were noted. R. at 12.

In February 1987, more than three decades after discharge, the appellant's private treating physician declared him "legally blind" as a result of "optic atrophy." R. at 21. At that time the appellant's corrected vision was 20/400+ in his right eye and 20/400- in his left eye. *Id.*

In August 1992, approximately five years after being declared legally blind, the appellant received a VA ophthalmological examination[1] as part of a special rehabilitation program. R. at 23. The physician conducting the examination noted that the appellant had "optic atrophy which was congenital and possible labors, some drus[e]n[2] in the macular area," but that "no other ocular pathology was detected." *Id.*

In April 1994, the New York, New York, VA regional office (RO) awarded the appellant a non-service-connected pension, citing a November 1993 VA medical center (VAMC) examination report that concluded that he "ha[d] optical atrophy of both eyes, possible [congenital] Leber's optical atrophy[3] noted since age 6." R. at 27.

In July 2002, eight years after his original pension award, the appellant filed a disability compensation claim with the RO for optical atrophy. R. at 37-54. In June 2003, the RO denied that claim, finding that his eye disorder was the product of a non-compensable congenital or

---

[1]  The resulting examination report specifically noted that the "visual acuity and visual fields given in this summary are derived using special techniques, lighting and equipment designed for low vision, other than the standard techniques, lighting and equipment described in the VA Physician's Guide for disability evaluation and examination, and cannot be used for rating purposes." R. at 23.

[2]  "Drusens" are "hyaline excrescences in the Bruch layer of the choroid; they usually result from aging, but sometimes occur with pathologic conditions." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 575 (31st ed. 2007) [hereinafter DORLAND'S].

[3]  "Leber optic atrophy," also called "Leber hereditary optic neuropathy," is "a rare hereditary disorder . . . occurring most commonly in males, with onset usually at about age twenty; it is characterized by degeneration of the optic nerve and papillomacular bundle, resulting in a progressive loss of central vision that may remit spontaneously." DORLAND'S at 1228.

2

developmental defect that was unrelated to and not aggravated by his military service.  R. at 56-59.  The appellant appealed that decision.  R. at 64.

In July 2003, the appellant's primary VA physician completed a one-page questionnaire regarding the appellant's eye condition.  R. at 67.  After noting that he had been treating the appellant for about 11 years, the physician opined that the appellant suffered from optical atrophy, age-related macular degeneration, and legal blindness.  *Id.*  The doctor also checked the box marked "NO" when asked if any of the noted visual impairments were related to the appellant's military service.  *Id.*  The record indicates that the RO received a copy of that questionnaire the following month.

In June 2004, after receiving medical records from the New York, New York VAMC, the RO issued a Statement of the Case (SOC).  R. at 238-252; *see* R. at 75-237.  That SOC, the result of a de novo review of the appellant's claim by a decision review officer, denied the claim for substantially the same reasons provided in the original June 2003 RO decision.  R. at 251-52.  The following month, the appellant perfected his appeal to the Board.  R. at 254.  In February 2005, the appellant provided the Board with additional evidence, including a March 1993 treatment note indicating that a physician had determined that he did not have a Leber's mutation.  R. at 288.

In April 2006, the appellant provided the Board with a statement in support of his appeal.  R. at 292-96.  In that statement, he asserted that the absence of his SMRs gave rise to a heightened obligation on the part of VA to explain any decision on his claim and to consider the benefit-of-the-doubt doctrine.  R. at 293.  He further noted that the issue of service connection largely depended upon whether his optical atrophy was considered a "congenital defect" or a "congenital disease" and that the medical evidence of record did not permit a proper ruling on that question.  R. at 293-94.  Finally, he argued that his condition was not noted at the time of his April 1951 induction examination, that the presumption of soundness, therefore, applied, and that VA had not rebutted that presumption by clear and unmistakable evidence.  R. at 294-95.

On May 10, 2006, the Board issued the decision here on appeal.  R. at 1-10.  After acknowledging that the destruction of the appellant's SMRs created "a particularly great duty upon VA to assist the veteran," the Board found that the record required no further development.

3

R. at 5. The Board then explained that so-called "congenital defects" are treated differently than "congenital diseases" in the context of VA disability compensation. *Id.* Specifically, the Board noted that "congenital defects" are excluded from the list of qualified diseases or injuries. Therefore, the Board noted, VA disability compensation may only be awarded in the event that an additional, service-connected disability is superimposed upon a congenital defect. *Id.* However, the Board explained that "congenital diseases" are directly compensable and that VA disability compensation may be awarded if a congenital disease is aggravated by a claimant's military service. *Id.* The Board concluded that the appellant's optic atrophy was a congenital defect and that no additional disability was superimposed upon that defect as a result of his military service. R. at 6. The Board further reasoned that, even if his optic atrophy were a congenital disease, the evidence of record did not support a finding of service-related aggravation because the appellant's transfer examination noted that his vision was "normal." R. at 6-8.

## II. ARGUMENTS

In his initial brief, the appellant alleges two errors by the Board. First, the appellant argues that the Board failed to afford him the statutory presumption of soundness. Appellant's Brief (Br.) at 5. Second, the appellant asserts that the Board failed to properly classify his optic atrophy as a congenital disease. *Id.* at 12. The appellant contends that either alleged error warrants reversal and that his case should be remanded for further adjudication. The appellant further argues that the Secretary should not be permitted to rebut the presumption of soundness on remand. Br. 12-13.

The Secretary argues that the Board's decision should be affirmed. Secretary's Br. at 4-10. He asserts that the Board's decision was based on clear and unmistakable evidence that rebutted the presumption of aggravation. Secretary's Br. at 6. However, he contends that, should the Court conclude otherwise, a remand for a medical examination to determine whether the appellant's optic atrophy is a congenital disease or defect would be appropriate. Secretary's Br. at 10-12.

4

## III. ANALYSIS

The issue before the Court is the proper application of the presumption of soundness to congenital conditions. As explained below, the mere fact that a condition is the result of a congenital cause does not necessarily mean that the condition itself manifested before service or that it was not aggravated by service. In this regard, it is important to distinguish between conditions that are diseases and those that may properly be considered defects. Accordingly, to properly analyze a claim for compensation for a congenital condition, the Board must appropriately classify the condition and explicitly discuss the potential application of the presumption of soundness.

### A. Classification of Congenital Conditions

The appellant argues that the Board erred in classifying his optic atrophy as a congenital defect rather than a congenital disease. Appellant's Br. at 10. The Secretary argues that the Board properly classified the appellant's eye condition as a congenital defect, that congenital defects are not contemplated by the legislation governing disability compensation, and that the appellant's continually deteriorating vision was "probably secondary to a defect experienced by [the appellant] since the age of six." Secretary's Br. at 9. The Secretary further contends that, should the Court remand this matter, it should allow VA to seek a medical opinion for the purposes of definitively establishing whether the appellant's condition is a defect or a disease. *Id.* at 10-11.

The Secretary is correct in noting that VA regulations state that congenital or developmental defects "are not diseases or injuries within the meaning of applicable legislation." 38 C.F.R. § 3.303(c). This Court has recognized that congenital diseases, but not defects, may be service connected. *See Winn v. Brown*, 8 Vet.App. 510, 516 (1996). In *Winn*, we held that the term "disability," as used in 38 U.S.C. § 1110, cannot include "non-disease or non-injury entities such as congenital defects," because it would lead to the absurd result of requiring the Secretary to meet his burden of rebuttal under the presumption of soundness "only by evidence of disease or injury when a congenital defect is neither a disease nor an injury." *Id.* Recognizing the important distinction between the two, the VA General Counsel issued an opinion explaining how congenital conditions may properly be classified as either defects or diseases. *See* VA Gen.

5

Couns. Prec. 82-90 (first released as 1-85 on March 5, 1985). The General Counsel opinion[4] draws on medical authorities and case law from other federal jurisdictions and concludes that a defect differs from a disease in that the former is "more or less stationary in nature" while the latter is "capable of improving or deteriorating." VA Gen. Couns. Prec. 82-90 at p. 2.

In its decision, the Board discussed the appellant's condition as both a defect and a disease. R. at 6-8. Although the Board cited the opinion of the General Counsel, it did not properly apply the opinion's framework to the facts before it. Specifically, as discussed more fully below, the Board erred in finding that there is no evidence to suggest that the appellant's condition worsened during service. Under the framework set forth in the General Counsel opinion, any worsening—any change at all—might demonstrate that the condition is a disease, in that VA considers defects to be "more or less" static and immutable. *See* VA. Gen. Couns. Prec. 82-90 at p. 2. The Court holds that the Board failed to properly explain its application of the analysis set forth in VA Gen. Couns. Prec. 82-90. The Court notes, however, that its holding should not be construed to suggest that the appellant's condition worsened as a result of service, as that is a finding of fact to be determined by the Board.

On remand, the Secretary should seek a medical examination to determine whether the appellant's condition may be properly deemed a defect. The Board is permitted wide discretion in seeking medical opinions if it believes that the facts of a particular matter warrant medical review. *See* 38 C.F.R. § 20.901. The General Counsel opinion suggests that the determination must be supported by "guidance from medical authorities regarding the proper classification of a medical condition at issue." VA. Gen. Couns. Prec. 82-90 at p. 2. Moreover, this Court has held that the Board should seek medical opinions as necessary to determine the sufficiency of the evidence offered to rebut the presumption of soundness. *Adams v. West*, 13 Vet. App. 453 (2000), *aff'd sub nom. Adams v. Principi*, 256 F.3d 1318 (Fed. Cir. 2001). The regulations implementing 38 U.S.C. § 1111 state that medical evidence is necessary to rebut the presumption of soundness and that the Board should not make such a determination without seeking medical opinions. *See* 38 C.F.R. § 3.304(b); *see Adams*, *supra*. Although the Secretary may not seek an

---

[4] Neither party challenges the validity of the opinion, and the Court need not consider whether or how that opinion comports with the statutory or regulatory framework governing the issue on appeal.

opinion for the sole purpose of discrediting an appellant's claim, the Board is free to obtain a medical opinion to clarify an issue of medical complexity. *See Adams*, *supra*; *see Mariano v. Principi*, 17 Vet.App. 305, 312 (2003).

The appellant, on remand, is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet. App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet. App. 529, 534 (2002). The Board shall proceed expeditiously, in accordance with U.S.C. §§ 5109B, 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

## B. Presumptions of Soundness and Aggravation

The appellant raises a related error that the Court must address so that it will not be repeated by the Board on remand. It is well settled that the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion. *Best v. Principi*, 15 Vet. App. 18, 19-20 (2001). The United States Court of Appeals for the Federal Circuit (Federal Circuit), however, has recognized the need to address additional arguments, after the court determines that remand is necessary, in order to provide guidance to the lower tribunal. *See Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1314-1315 (Fed. Cir. 2006) (discussing a prior decision in which the court addressed additional arguments for the express purpose of providing guidance to the district court on remand); *see also Taylor v. McKeithen*, 407 U.S. 191, 194 n.4 (1972) (stating that courts of appeal have wide latitude in deciding how to write an opinion); *accord Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002). In this case, should the Board, on remand, find that the appellant's condition is a congenital disease, it must properly apply the presumption of soundness. It is appropriate, therefore, for the Court to address additional errors made by the Board, with respect to the application of the presumption of soundness, that must be corrected so as to ensure a proper decision on remand.

### 1. Burden-Shifting Framework

Upon entering service, an individual will be presumed sound, "except as to defects, infirmities, or disorders noted at [entry], or where clear and unmistakable evidence demonstrates

that the injury or disease existed before [service] and was not aggravated by such service." 38 U.S.C. §§ 1111, 1132; 38 C.F.R. § 3.304(b). "Clear and unmistakable evidence," as used in the governing statutes, has been interpreted to mean evidence that "cannot be misinterpreted and misunderstood, i.e., it is undebatable." *Vanerson v. West*, 12 Vet.App. 254, 258-59 (1999) (citing definition of "clear and unmistakable error" in *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc)).

In *Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004), the Federal Circuit discussed the interplay between the statutory presumptions of soundness and aggravation and its effect on VA's burden of rebuttal. The Federal Circuit neatly summarized the burden-shifting framework as follows:

> The effect of section 1111 on claims for service-connected disability thus may be summarized as follows. When no preexisting condition is noted upon entry into service, the veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress" of the preexisting condition.

370 F.3d at 1096 (quoting 38 U.S.C. § 1153). In deciding whether a condition preexisted service, the Board must consider the veteran's medical history, accepted medical principles, evidence of the "basic character, origin and development" of the condition, and "lay and medical evidence concerning the inception, development and manifestations" of the particular condition. 38 C.F.R. § 3.304(b)(1), (2).

This Court reviews de novo a Board decision concerning the adequacy of the evidence offered to rebut the presumption of soundness. *See Cotant v. Principi*, 17 Vet.App. 116, 130 (2003). However, the Federal Circuit has stated that, in reviewing the legal sufficiency of such rebuttal evidence, this Court may employ the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review because it subsumes de novo review of questions of law. *Kent v. Principi*, 389 F.3d 1380, 1383 (Fed. Cir. 2006).

*2. Application to Congenital Conditions*

The Federal Circuit has made clear that the only prerequisite for the application of the presumption of soundness is that the veteran's entry examination be clear of any noted diseases

or disabilities. *See Wagner*, 370 F.3d at 1096. This Court has recognized that service connection may be granted for congenital diseases. *See Monroe v. Brown*, 4 Vet.App. 513, 515 (1993). We have also held that the presumption of soundness applies if a veteran's congenital condition is not noted at entry. *See id.* The presumption of soundness does not, however, apply to congenital defects, because such defects "are not diseases or injuries" within the meaning of 38 U.S.C. §§ 1110 and 1111. 38 C.F.R. § 3.303(c); *see Terry v. Principi*, 340 F.3d 1378, 1385-86 (Fed. Cir. 2003) (holding that the presumption of soundness does not apply to congenital defects); *see Winn*, 8 Vet.App. at 516 (holding that a non-disease or non-injury entity such as a congenital defect is "not the type of disease- or injury-related defect to which the presumption of soundness can apply").

Here, it is undisputed that the appellant's available entry documents do not note any disability or defect.[5] R. at 7, 15, Secretary's Br. at 7. Therefore, under *Wagner*, the Board should have found that the presumption of soundness attached and should have discussed its relevance. In failing to discuss the presumption, the Board erred in two respects. First, the Board simply presumed that the appellant's condition preexisted service. The Board, therefore, operated under the assumption that the Secretary had, in essence, rebutted the first prong of the presumption of soundness. As discussed above, however, the Board's determination that the appellant's condition is a defect was flawed to the extent that it failed to properly apply VA. Gen. Couns. Prec. 82-90. Moreover, even assuming, *arguendo*, that the Board's finding regarding the nature of the appellant's congenital condition was correct, its discussion of how that finding affects the first prong of the presumption of soundness was inadequate.

Second, the Board appears to have presumed that the appellant's visual acuity may have been the same at entry as it was when he transferred from service. R. at 6-8. Although the Board correctly noted that there are no medical opinions of record indicating that the appellant's eye condition worsened during service, its analysis is faulty. The Federal Circuit has made clear

---

[5] Although the Secretary does not dispute that the appellant's entry documents lack any indication of a visual disability or defect, the Court notes that the appellant's "military personnel and medical records were likely destroyed by [an] accidental fire." R. at 5. As it would be purely speculative to suggest that any records that may have been destroyed may also have contained evidence of a preexisting disability, the Court cannot conclude that the destruction of the appellant's records precludes the application of the presumption of soundness. Moreover, this Court has held that the presumption applies even when the record of a veteran's entrance examination has been lost or destroyed while in VA custody. *See Lee v. Brown*, 10 Vet.App. 336, 339 (1997) (directing the Board to consider the presumption of soundness on remand in a case in which the veteran's service medical records were presumed destroyed in a fire).

that the Secretary may rebut the second prong of the presumption of soundness through demonstrating, by clear and unmistakable evidence, *either* that (1) there was no increase in disability during service, or (2) any increase in disability was due to the natural progression of the condition. *Wagner*, 370 F.3d at 1096. With regard to the former, the Board erred in relying exclusively on the visual acuity readings contained in the appellant's transfer examination report, finding that there is no evidence of record to support the appellant's contention that his vision worsened during service. The appellant's visual acuity at separation was demonstrably impaired, however, with uncorrected distant vision of 20/60 for the right eye and 20/100 for the left eye and corrected distant vision readings of 20/60, bilaterally. R. at 7, 18. The Board failed to adequately explain how these readings constitute "clear and unmistakable evidence" that the appellant's vision did not deteriorate while in service. *See Vanerson*, *supra*.

The Board further failed to adequately articulate a finding with respect to the natural progression of the appellant's condition. The decision does not address the evidence of record that suggests that the appellant's apparently deteriorating vision may have been the result of the natural progress of the disease. Although the Board noted that several medical opinions had variously diagnosed the veteran's eye disease as optic atrophy, Leber's optic atrophy, and age-related macular degeneration, it did not specifically address to what extent, if at all, this evidence satisfies VA's burden of rebutting the aggravation prong of the presumption of soundness. R. at 6. Moreover, the Board decision did not discuss specifically relevant facets of the record, such as a medical questionnaire that indicates that the physician did not believe that the appellant's optic atrophy is related to his military service. R. at 67. In not discussing this evidence, the Board improperly presumed that the Secretary had rebutted the second prong of the presumption of soundness. The Board's failure to provide an adequate statement of reasons or bases for its decision effectively frustrates judicial review. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

As discussed above, the Court will vacate and remand the decision so that the Board may properly apply VA Gen. Couns. Prec. 82-90 in determining whether the appellant's condition is a defect or a disease. If applicable, the Board must also consider and properly apply the presumption of soundness, in accordance with this decision.

10

## III.  CONCLUSION

After the Court's consideration of the appellant's and the Secretary's briefs, and its review of the record, the Board's May 10, 2006, decision is VACATED and the matter REMANDED to the Board for further proceedings consistent with this decision.