Citation Nr: 1222000 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 05-25 494 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to service connection for heart disease.

2. Entitlement to service connection for hypertension.


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs


ATTORNEY FOR THE BOARD

S. M. Marcus, Counsel



INTRODUCTION

The Veteran served on active duty from July 1956 to July 1959.

This matter is before the Board of Veterans' Appeals (Board) following an August 2010 Order from the Court of Appeals for Veterans Claims (CAVC or the "Court") vacating a July 2008 Board decision that denied the issues on appeal and remanded for further development. The appeal is originally on appeal from a June 2003 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon. 

The case was previously brought before the Board in May 2011, at which time the claims were remanded to allow the Agency of Original Jurisdiction (AOJ) for further development. The requested development having been completed, the case is once again before the Board for appellate consideration of the issues on appeal. 

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the Veteran if further action is required on his part.


REMAND

The Veteran believes he had hypertension in service which has caused other heart disease. The Board previously remanded this claim to afford the Veteran a VA examination to clarify medical evidence as to when he was first diagnosed with hypertension. 

The Veteran was then afforded a VA examination in June 2011 where the examiner concluded the Veteran has a congenital heart condition, which by its very definition pre-dated service. Although it is unclear when the Veteran's hypertension first manifested, the examiner opined that the Veteran's hypertension and current heart diseases, to include aortic stenosis, were caused by his congenital heart condition, namely bicuspid aortic valve and coarctation.

Unfortunately, the medical evidence is still unclear and an additional opinion is needed to decide the claim. 38 C.F.R. § 3.159(c)(4). 

The report of July 1956 enlistment examination included blood pressure readings of 180/90 and 140/76. The Veteran self-reported a history of jaundice in 1952 where he had high blood pressure at that time; however, no defect or diagnosis was noted at the time of the July 1956 enlistment examination. The Veteran was treated for appendicitis in November 1956 where he was noted to have high blood pressure. His April 1959 separation examination noted blood pressure reading of 138/88 where the Veteran was diagnosed with "labile hypertension." Incidentally, the June 2011 VA examiner explained that "labile hypertension" means blood pressure that changes quickly with stress or exercise. 

After service, there are conflicting medical opinions as to when the Veteran first developed hypertension and other heart disorders, and the likely etiology. While some physicians have dated the Veteran's hypertension to service or within one year of service, others indicate it developed years after service and the in-service incidences of high blood pressure in the military were merely manifestations of stress or pain (such as at the time of the November 1956 appendicitis). 

Most recently, the June 2011 VA examiner opined the Veteran's hypertension did not "clearly and unmistakably" pre-exist service, but still found his hypertension "most likely" pre-existed service. In any case, the June 2011 VA examiner found the most important piece of evidence in the claims folder was a cardiac catheterization that was done (post-military) in January 1992 where the findings included "bicuspid aortic valve with coarctation." The 2011 examiner explained that a bicuspid aortic valve is "a congenital condition" and the Veteran's hypertension and other diagnosed heart diseases all stem from this congenital condition. In fact, the examiner explained that the heart condition usually goes undetected until middle age, which is why it was never diagnosed or treated in the military. Labile hypertension, which was noted during the Veteran's service, is a "known hallmark" of this congenital condition. Bicuspid aortic valve, moreover, is the most common cause of aortic stenosis; and systemic hypertension is the most common long term complication of bicuspid aortic valve. 

The medical evidence in this case is unclear as to whether bicuspid aortic valve is a congenital defect or a congenital disease, whether the labile hypertension noted in service in an early manifestation of that condition and whether any of the currently diagnosed heart conditions was incurred in or aggravated by service. 

There is a distinction between congenital or developmental defects, for which service connection is precluded by regulation, and congenital or hereditary diseases, for which service connection may be granted, if initially manifested in or aggravated by service. See VAOPGCPREC 82-90, 55 Fed. Reg. 45,711 (1990). In that opinion, a defect is noted to be "more or less stationary in nature," while a disease is "capable of improving or deteriorating." The presumption of soundness does not apply to congenital defects. Quirin v. Shinseki, 22 Vet. App. 390 (2009). 

The June 2011 VA examiner inconsistently refers to bicuspid aortic valve as a congenital "condition," "defect," and "disease" within the same opinion. These are medical inquiries that were not addressed in the prior VA examinations and, therefore, the Veteran is entitled to a new VA examination. See also 38 U.S.C. § 5103A(d) (2002); Schroeder v. West, 212 F.3d 1265 (Fed. Cir. 2000) (requiring the VA to investigate all possible in-service causes of a veteran's current disability, including those unknown to the veteran). 

The RO should also take this opportunity to obtain any and all recent VA or private treatment records not currently in the claims folder.

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to identify all medical care providers who treated him for hypertension or heart disease since July 2008. After obtaining necessary releases, obtain those records. 

2. After obtaining the above records, to the extent available, schedule the Veteran for an appropriate VA examination, ideally with a cardiologist, to determine the nature and likely etiology of his bicuspid aortic valve, hypertension and any other heart disease found. 

The entire claims file (i.e. both the paper claims file and any medical records contained in Virtual VA) should be made available to and be reviewed by the examiner in conjunction with the examination. If the examiner does not have access to Virtual VA, any treatment records contained in Virtual VA file must be printed and associated with the paper claims file so they can be available to the examiner for review. 

Based on the examination and review of the record, the examiner should specifically identify all pathology and answer the following: 

(a) Is the Veteran's bicuspid aortic valve a congenital defect or congenital disease? 

(i) If a congenital defect, was the defect at least as likely as not (50 percent probability) subject to any superimposed disease or injury (to include the in-service appendicitis or labile hypertension) during service and whether such caused resultant disability;

(ii) If a congenital disease, was the disease at least as likely as not (50 percent probability) increased in severity beyond the natural progression of the disease due to his military service. 

(b) Is it at least as likely as not (50 percent probability) that any of currently diagnosed heart conditions, to include hypertension and aortic stenosis, were caused or aggravated by any incident of service. 

The examiner should address the significance of the in-service finding of labile hypertension and June 2011 VA examiner's statement that labile hypertension is a "hallmark" of biscupid aortic valve. 

3. After the above is complete, readjudicate the Veteran's claims. If the claims remain denied, issue a supplemental statement of the case to the Veteran and his representative, and they should be given an opportunity to respond, before the case is returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. 

No action is required of the Veteran until further notice. However, the Board takes this opportunity to advise the Veteran that the conduct of the efforts as directed in this remand, as well as any other development deemed necessary, is needed for a comprehensive and correct adjudication of his claims. His cooperation in VA's efforts to develop his claims, including reporting for any scheduled VA examination, is both critical and appreciated. The Veteran is also advised that failure to report for any scheduled examination may result in the denial of a claim. 38 C.F.R. § 3.655. 

The claim must be afforded expeditious treatment.



_________________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2011).