http://www.va.gov/vetapp16/Files4/1630508.txt

Citation Nr: 1630508 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 08-22 699 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama

THE ISSUE

Entitlement to service connection for a heart disability, claimed as heart murmur and as secondary to service-connected disabilities.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

M. Nye, Associate Counsel

INTRODUCTION

The Veteran served on active duty from November 1995 to March 2001.

This matter comes to the Board of Veterans' Appeals (Board) from a November 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

In March 2012, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record.

The Board remanded this issue for further development in May 2012, April 2014 and January 2016. For the reasons below, the RO has substantially complied with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

FINDINGS OF FACT

1. The Veteran has a heart murmur with tricuspid valve regurgitation, which is a congenital defect and not a disability for VA purposes.

2. The Veteran's heart murmur with tricuspid valve regurgitation was not the subject of a superimposed disease or injury in service.

CONCLUSION OF LAW

The criteria for entitlement to service connection for vision disorder have not been met. 38 U.S.C.A. §§ 1110, 1112, 1131, 5103, 5103A (West 2014) 38 C.F.R. §§ 3.303, 3.303(c), 3.304, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. The Veterans Claims Assistance Act of 2000 (VCAA)

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015).

Duty to Notify

The VCAA and implementing regulations impose obligations on VA to provide claimants with notice and assistance. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. The notice VCAA requires depends on the general type of claim the Veteran has made. "As a result, generic notice provided in response to a request for service connection must differ from that provided in response to a request for an increased rating." Vasquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (Fed. Cir. 2009).

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the Court held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all elements of a claim for service connection. These are: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of disability. Id. at 486.

The claimant in this case has substantiated his status as a veteran. In a letter dated November 2005, the RO notified him of all the other elements necessary to establish his claim.

Duty to Assist

VA has fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate the claim. Service treatment records, post-service treatment records, and lay statements have been associated with the record.

The RO arranged for examinations of the Veteran and requested medical opinions on nature and etiology of the Veteran's claimed heart disability in August 2012 and July 2014. The Board determined that previously available opinions were inadequate in April 2014 and January 2016 and, on both occasions, remanded this issue, most recently with instructions to obtain an addendum report form the July 2014 VA examiner. The RO obtained the requested addendum in February 2016. 

The Board has carefully reviewed the February 2016 addendum opinion and finds that, together with the previous examination reports, the opinion provided the information requested in the Board's prior remand instructions and is adequate for rating purposes. See Stegall, 11 Vet. App. at 268.

As the Veteran has not identified additional evidence pertinent to the claim and as there are no additional records to obtain, no further assistance to the Veteran is required to comply with VA's duty to assist.

II. Analysis

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship - or "nexus" - between the current disability and an in-service precipitating disease, injury or event. See Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009). 

Depending on the facts of the individual case, service connection may be proven directly "by affirmatively showing inception or aggravation during service or through the application of statutory presumptions . . ." 38 C.F.R. § 3.303(a), or on a "secondary" basis if the claimed disability is proximately due to, the result of, or aggravated by, a disease or injury which is service-connected. See 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, 449 (1995). 
In his initial application for service-connected disability benefits, the Veteran indicated that he began to experience a heart murmur in 2000. Service treatment records confirm the existence of a heart murmur. According to his June 1995 entrance examination report, the Veteran's heart was normal at that time. He completed a report of medical history the same day, and marked "yes" next to pre-printed text asking him to indicate whether he ever had "heart trouble or murmur". 

According to a February 1996 treatment record, the Veteran was first diagnosed with a heart murmur at birth. In a health questionnaire for dental treatment, dated November 1999, the Veteran identified a heart murmur as a previous condition and, once again, indicated that this condition was diagnosed at birth. Additional records from January 2001 likewise reported that the Veteran had a heart murmur since birth. An echocardiography report, dated May 2000, indicated mild tricuspid regurgitation.

The failure to note a heart condition on the Veteran's entrance examination potentially implicates the statutory presumption of soundness. Under this presumption, except for defects, infirmities or disorders noted on an entrance examination, every veteran is generally presumed to have been in sound condition when examined, accepted and enrolled for service. See 38 U.S.C.A. § 1111 (West 2014); see also Quirin v. Shinseki, 22 Vet. App. 390, 395 (2009) (indicating that the only prerequisite for applying the presumption of soundness at service entrance is that the enlistment or induction examination report have been free and clear of the now claimed disability).

In Quirin, the Court held that the presumption of soundness applies even to a congenital condition not noted at entry, unless the condition is a congenital "defect" not eligible for service connection in the first place. Id. at 396-97. Congenital or developmental defects are not considered "diseases or injuries" within the meaning of applicable legislation and, hence, do not constitute disabilities for VA compensation purposes. See 38 C.F.R. §§ 3.303(c), 4.9 (2015). However, the mere fact that a disorder is congenital in origin does not preclude service connection. See VAOGC 8-88 (Sept. 1988), reissued as VAOPGCPREC 67-90 (July 18, 1990) (noting that diseases of hereditary origin can be incurred or aggravated in service if their symptomatology did not manifest itself until after entry on duty); VAOPGCPREC 82-90 (July 1990) (holding that "service connection may be granted for diseases (but not defects) of congenital, developmental or familial origin"). Only congenital "defects", as opposed to congenital "diseases" are excluded from the types of disabilities that may be service connected, as congenital defects are not considered diseases or injuries under VA law. 

Congenital defects are static in nature, and thus the litmus test for distinguishing a congenital defect from a congenital disease is whether the disorder in question is subject to change. See VAOPGCPREC 67-90. As explained in a precedential opinion of VA's General Counsel, "congenital or developmental defects are normally static conditions which are incapable of improvement or deterioration." Id. The opinion states further: "A disease, on the other hand, even one which is hereditary in origin, is usually capable of improvement or deterioration." Id.; see also Quirin, 22 Vet. App. at 395 ("[u]nder the framework set forth in the General Counsel opinion, any worsening - any change at all - might demonstrate that the condition is a disease, in that VA considers defects to be 'more or less' static and immutable") (citing VAOPGCPREC 82-90)). 

Congenital defects are potentially eligible for service connection only to the extent that the defect is subject to in-service superimposed disease or injury. See VAOPGCPREC 82-90; Carpenter v. Brown, 8 Vet. App. 240, 245 (1995).

To help decide the claim, the RO arranged for an examination of the Veteran by a VA physician assistant in August 2012. The diagnosis was "heart murmur, tricuspid regurgitation." The report indicated a history of cardiac arrhythmia, specifically "intermittent" arrhythmia with more than 4 episodes in the last 12 months. In the examiner's opinion, the claimed condition was a congenital defect, which was clearly and unmistakably present prior to service and did not undergo an increase during service. 

The Board remanded the case, in part because the examiner's report left unclear whether there was a current heart disability, in part because the report was vague about whether the heart murmur, arrhythmia and tricuspid valve regurgitation were separate disabilities or different aspects of a single disability, and also because the August 2012 VA examiner failed to address an argument of the Veteran's representative suggesting that medications used to treat his other service connected disabilities, such as asthma and posttraumatic stress disorder (PTSD), caused an arrhythmia. In support of this argument, the Veteran's representative submitted articles from scholarly journals, which indicate that arrhythmias are more common in persons who use certain non-steroidal anti-inflammatory drugs (NSAIDs). On remand, the examiner was also asked to address certain hearing testimony from the Veteran indicating that, when he was in service, Army doctors discussing his heart murmur told him that "the hole" in his heart "had closed and it had turned into an atrial flutter." 

The Veteran was examined again in July 2014, this time by a VA physician. In her report, the physician diagnosed one disability: "tricuspid regurgitation, mild congenital." There was a II/VI mid-systolic murmur, which was audible only when the Veteran leaned forward. The examiner indicated that the claimant had not had an arrhythmia and gave the following opinion clarifying the number of disabilities: "The veteran's only diagnosed heart condition since November 2005 is mild tricuspid valve regurgitation which was shown on both May 2000 and June 2012 echocardiograms" and "heart murmur is consistent with mild ongoing tricuspid regurgitation." 

The July 2014 VA examiner disagreed with the Veteran's lay statements describing a possible secondhand diagnosis of atrial flutter due to the closing of "a hole" because "this is not supported by any of the available medical documentation as (1) the murmur is at least as likely as not a congenital defect which was still present and (2) there is nothing to show there was a true diagnosis of atrial flutter which must meet specific criteria for diagnosis." 

According to the examiner, an exercise stress test did not show any diagnosable arrhythmia as distinguished from "a sinus 'arrhythmia' [which is] a normal increase in heart rate which occurs with inspiration/breathing in and is NOT a pathological diagnosis or disease condition . . ." (emphasis in original). The examiner rejected the representative's argument on secondary service connection based on the effects of medications used to treat service-connected disabilities because, "[the articles] are not applicable as the only diagnosed heart disorder is a congenital defect."

In support of her conclusion that the Veteran's heart condition was a congenital defect, the VA examiner wrote that "[the Veteran] had no symptoms or signs prior to service and testing to this date shows no change in the function of the valve other than what is at least as likely as not his baseline mild tricuspid regurgitation." In the examiner's opinion, there was no additional in-service injury superimposed on the congenital defect. She explained that the "heart murmur is consistent with mild ongoing tricuspid regurgitation." 

According to the July 2014 VA examination report, the service treatment records did not include a copy of a Holter monitor report in service, although there is evidence that a Holter monitor study was ordered. The report did not, however, address a document in the service treatment records entitled "Procedure Summary" and dated June 2000. The document is clearly a list of cardiac test results of some kind and indicates a "few episodes sinus arrhythmia." 

In January 2016, the Board remanded the case to obtain an addendum opinion from the July 2014 VA examiner addressing the June 2000 Procedure Summary. On remand, the examiner was asked to "indicate whether [the document] constitutes the results of a Holter monitor study, and indicate whether an arrhythmia has been diagnosed." 

The February 2016 addendum opinion reads: "the medical opinions previously rendered . . . remain unchanged. None of the evidence shows that the noted few episodes of sinus arrhythmia was pathologic condition [sic] (NOT a disease or disorder). The sinus arrhythmia was an incidental finding of some variance in heart rate which has not been demonstrated as a recurrent issue on subsequent evaluations. As the rhythm was still sinus, this is not a disease process in and of itself nor does the evidence support this as a cardiac disease condition"

In spite of the confusing double negative in the second sentence, it is clear from the surrounding context that the examiner complied with the remand directive to "indicate whether an arrhythmia has been diagnosed." The examiner considered the note indicating "episodes of sinus arrhythmia" and clarified that this document referred to the type of arrhythmia described earlier in her July 2014 report, which is "a normal increase in heart rate which occurs with inspiration/breathing in and is NOT a pathological diagnosis or disease condition . . ." (emphasis in original). 

The Board recognizes that the addendum opinion did not indicate whether the June 2000 document in question recorded the results of a Holter monitor study, although the examiner was requested to do so. Nevertheless, the Board finds that, together with the information provided in the July 2014 report, the February 2016 addendum complied with the Board's prior remand instructions. The purpose of the January 2016 remand was to clarify whether "episodes of sinus arrhythmia", which were documented in June 2000, were a disease or injury of the heart separate and apart from the congenital defect described in the July 2014 report and, in the absence of further information, potentially a separate disability subject to service-connected disability compensation. Whether the June 2000 document represented the results of a Holter monitor study or some other test, the February 2016 addendum appropriately clarified this matter by explaining that "this is not a disease process in and of itself nor does the evidence support this as a cardiac disease condition . . ."

The February 2016 addendum does not explicitly address questions concerning the congenital disease/defect analysis, which were part of the Board's remand instructions in April 2014 and again in January 2016. The examiner wrote that "sections (b) through (g) [of the January 2016 remand directives] are not applicable as there is no disease/disorder present." In light of the examiner's earlier opinion that tricuspid valve regurgitation with murmur was a congenital defect, it is not strictly correct to say that section (c) of the January 2016 remand instructions was "inapplicable" because, if there is a congenital defect, section (c) of the remand asks the examiner to opine whether the Veteran "now has additional disability due to an in-service disease or injury superimposed on such defect. The examiner should specifically address the [test results document described above] and whether it indicates any disease or injury superimposed upon the Veteran's congenital heart murmur." 
However, in her February 2016 addendum, the examiner substantially complied with the Board's instructions by incorporating by reference her July 2014 report, which did specifically answer these questions in sections (b) through (g) and provided explanations for the examiner's conclusions. The July 2014 opinion did not supply all of the information required by those instructions. But, according to the February 2016 addendum, the sinus arrhythmias noted in June 2000 did not indicate a disease process. From that premise, together with the examiner's earlier opinion that tricuspid valve regurgitation was a congenital defect, it follows that those sinus arrhythmias did not amount to an in-service injury superimposed on a congenital defect.

In addition to the examination reports, the Board has considered the Veteran's hearing testimony, his written statements and his medical treatment records, both during and after his active duty service. At the hearing, the Veteran testified that a heart murmur was diagnosed at the time of his birth. With respect to his current symptoms, he said that he had no pain in his heart. He said he did not "really do any exertion - any exerting exercises" and that he "would be out of breath" after climbing a flight of stairs. Although he mentioned these symptoms when asked about his heart murmur, the Veteran partly attributed his fatigue to asthma. This decision has already summarized his testimony about in-service treatment for a heart murmur. According to the Veteran, military physicians told him that "the basic hole in the heart had closed and it had turned into an atrial flutter."

With respect to his heart disability claim, the Veteran's written statements are essentially repetitive of his hearing testimony.

Many of the relevant service treatment records were described in the above discussion of the various VA examination reports. Other records show that the Veteran reported chest pain and palpitations in service. These reports prompted medical personnel to investigate the Veteran's heart murmur in May 2000. The May 2000 echocardiogram indicated mild tricuspid regurgitation. Holter tests were normal. On a report of medical history from December 2000, the Veteran checked "yes" next to text indicating a history of "palpitation or pounding heart" and "no" next to "pain or pressure in chest" and "no" next to "heart trouble." On the reverse side of the form, the Veteran attributed his in-service palpitations to anxiety attacks. According to a December 2000 medical examination report, a few months before he was discharged, the Veteran's heart was normal. 

Post service VA treatment records include a normal echocardiogram dated February 2006 and a second normal echocardiogram dated October 2008. A June 2012 echocardiogram indicated a normal tricuspid valve. According to a February 2006 primary care physician note, the Veteran made statements consistent with his hearing testimony, i.e., that he was told a "whole [sic] is closed" creating arrhythmia and atrial flutter. The treating physician wrote that no gallops or murmurs were apparent. According to the notes of VA physicians in January, March and May of 2016, which are part of his Virtual VA electronic claims file, he had a regular heart rhythm, with no murmurs.

On the issue of whether the Veteran's heart condition is a congenital defect, the Board finds that the most probative evidence is the opinion of the July 2014 VA examiner, including her February 2016 addendum. Although the Veteran is competent to say that military physicians diagnosed him with atrial flutter in service, see Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007), the Board assigns greater weight to the contrary finding of the July 2014 VA examiner, because she provided persuasive reasons for rejecting that diagnosis and those reasons are consistent with the available service treatment records, i.e., that the Veteran's tricuspid regurgitation is congenital and that, despite the presence of multiple test results, nothing in the service treatment records indicates the closure of a hole in the heart and none of the records report a diagnosis of atrial flutter. The Board recognizes that the absence of contemporary records is not, in itself, sufficient to reject a Veteran's lay statements. See Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). Because, in this case, there are available records which indicate a specific diagnosis - tricuspid valve regurgitation - without a diagnosis of atrial flutter, the absence of an in-service diagnosis of atrial flutter is significant. 

The Board has considered the scholarly articles and arguments submitted by the Veteran's representative with respect to secondary service connection. Medical and academic treatises can certainly be useful in developing opinions on issues of service connection. But neither the articles nor the arguments of the Veteran's representative include a discussion of the individual Veteran's symptoms and they make no attempt to respond to the evidence that his heart condition is a congenital defect. Cf. Herlehy v. Brown, 4 Vet. App. 122, 123 (1993) (in general, medical opinions directed at specific patients are more probative than medical treatises). 

In her July 2014 report, the VA examiner wrote that "[the articles] are not applicable as the only diagnosed heart disorder is a congenital defect." This explanation is consistent with the Veteran's multiple statements indicating the presence of a heart murmur since his birth. The Veteran made similar statements describing a heart murmur since birth at least three times in service. He also said the same in his hearing testimony. The Board rejects the contrary statement in his November 2005 application for benefits, which suggests the disability arose in 2000. Prior inconsistent statements are generally considered to diminish credibility. See Fed. R. Evid. 613. The Rules of Evidence are not binding in VA proceedings, but they are persuasive authority in weighing credibility. See Rucker v. Brown, 10 Vet. App. 67, 73 (1997).

The Board further finds that the July 2014 VA examiner correctly classified the Veteran's condition as a "defect" rather than a "disease" because the condition has been more or less static and immutable. See Quirin, 22 Vet. App. at 395; VAOPGCPREC 82-90. The August 2012 VA examiner wrote that the Veteran's heart murmur "was a congenital defect that did not warrant treatment nor does it require treatment at this time." On this point, the July 2014 VA examiner made similar findings, indicating that the Veteran's heart murmur was "consistent with mild ongoing tricuspid regurgitation" and that the function of the tricuspid valve did not deviate from its normal baseline during active duty service. In her February 2016 addendum, the examiner explained that the sinus arrhythmias noted in June 2000 were not a disease process, implicitly supporting her earlier conclusion that the Veteran's heart condition is a congenital defect. 

The Veteran is competent to testify that he experienced palpitations in service. But the July 2014 VA examiner noted that the Veteran attributed these symptoms to his anxiety disorder shortly before his separation from service and that statement is consistent with the report of medical history completed by the Veteran in December 2000.

For these reasons, the Board finds that the Veteran's tricuspid regurgitation with II/VI mid-systolic murmur is a congenital defect. The Board further finds that this congenital defect was not the subject of a superimposed disease or injury in service. Because the claimed disability is a congenital defect, which was not the subject of superimposed disease or injury in service, the Veteran is not eligible for service connection, notwithstanding the omission of his heart condition from his entrance examination report. Quirin, 22 Vet. App. at 396-97.

While the Board recognizes the Veteran's sincere belief in his claim, the most competent medical evidence does not show that the Veteran has a current heart disability within the meaning of applicable legislation. Since there is no competent medical evidence of a current heart disability within the meaning of applicable legislation or evidence of a superimposed disability, the Board concludes that the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the claim must be denied. See 38 U.S.C.A. § 5107(b); see generally Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001).

ORDER

Entitlement to service connection for a heart disability, claimed as heart murmur and as secondary to service-connected disabilities is denied.

____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs