﻿Citation Nr: AXXXXXXXX
Decision Date: 03/18/19 Archive Date: 03/18/19

DOCKET NO. 181108-1296
DATE: March 18, 2019

ORDER

Service connection for an acquired psychiatric disorder, diagnosed as major depression, is granted.

Service connection for residuals of epididymo-orchitis, originally claimed as a groin injury, is denied. 

REMANDED

Service connection for back disability is remanded.

FINDINGS OF FACT

1. The evidence shows, clearly and unmistakably, that an acquired psychiatric disorder preexisted the Veteran's service.

2. The evidence does not show, clearly and unmistakably, that an acquired psychiatric disorder was not aggravated by service. 

3. The Veteran has not had a diagnosis of epididymo-orchitis during the appeal period. 

CONCLUSIONS OF LAW

1. The criteria for service connection for acquired psychiatric disorder, to include major depression, have been met. 38 U.S.C. §§ 1110, 1111, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.

2. The criteria for service connection for residuals of epididymo-orchitis, originally claimed as a groin injury have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from May 1976 to May 1979. He had periods of service in the National Guard through November 1999. 

The Board previously remanded this case for additional development in August 2017. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new framework.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form in May 2018. Accordingly, the September 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

1. Service connection for acquired psychiatric disorder other than PTSD

The Veteran contends that he had an acquired psychiatric disorder from childhood, which was aggravated in service. See June 2007 Statement. 

The AOJ has found that the Veteran has a current diagnosis of major depression. 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

In order to establish service connection for a claimed disorder on a direct basis, there must be competent evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service. See Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009).

A veteran is presumed to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at the time of examination, acceptance, enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. § 1111; 38 C.F.R. § 3.304.

A preexisting injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306; Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service. 38 C.F.R. § 3.306. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 C.F.R. §§ 3.304, 3.306.

The burden is not on the claimant to show that the claimed disability increased in severity; rather, it is on VA to establish by clear and unmistakable evidence that it did not or that any increase was due to the natural progress of the disease. Horn v. Shinseki, 25 Vet. App. 231, 232-235 (2012). Clear and unmistakable evidence means evidence that "cannot be misinterpreted and misunderstood, i.e., it is undebatable." Quirin v. Shinseki, 22 Vet. App. 390, 396 (2009).

The April 1976 enlistment examination did not note any psychiatric disorders. As the entrance examination did not indicate the presence of a psychiatric disorder, the presumption of soundness applies. To rebut this presumption, VA must show by clear and unmistakable evidence both that the injury or disease in question existed prior to service and that it was not aggravated by service. Id.

A March 1978 entry shows that the Veteran reported accidental consumption of petroleum. 

A November 1978 entry in the personnel records noted problems with the Veteran’s attitude and a need for constant supervision. 

A November 1979 VA examination reflects that the Veteran complained of “nerves.” No psychiatric diagnosis was noted on the examination. 

Reserve service treatment records dated in January 1991 reflect a complaint of depression and trouble sleeping. 

An April 1993 VA treatment record shows that the Veteran reported mental problems and a nervous breakdown. 

An August 1994 VA treatment record noted a diagnosis of anxiety and a complaint of hearing voices since 1978. The Veteran complained of anxiety and suicidal ideation. 

A November 1997 VA treatment record indicated that the Veteran “appeared to have a longstanding dysthymic disorder.” A December 1997 VA treatment record noted that the Veteran reported a history of depressive symptoms between 1976 and 1997. 

A December 1997 VA psychology record noted that the Veteran had depressive symptoms, even when not drinking or using drugs. It was noted that the Veteran had a long history of irresponsible and antisocial behavior which qualified for a diagnosis of antisocial personality disorder. 

A November 1998 VA treatment record reflects that the Veteran was referred for mental health evaluation during a period of service in the National Guard. A diagnosis of depressive disorder was noted. 

The Veteran had a VA examination in October 2017. The Veteran indicated that depressed mood, apathy, sleep disruption, feelings of worthlessness, concentration problems, and suicidal ideation had been present since his teen years. 

The examiner indicated that, based on a review of the medical record, the Veteran met the criteria for a diagnosis of major depressive disorder. The examiner noted psychotic symptoms that seemed to be related to increased distress and exacerbation of depressive symptoms. The examiner opined that a diagnosis of adjustment disorder could not be rendered. 

The examiner noted the Veteran’s report that depressed mood, apathy, sleep disruption, feelings of worthlessness, concentration problems, and suicidal ideation have all been present since his early teen years. The Veteran reported that he did not know that he was depressed and only later learned that he was experiencing depression. The examiner opined that it is possible that the Veteran’s military service, with notable events such as falling and hurting his back and suffering a groin injury during basic training, may have caused some exacerbation and/or further development of his depression. The examiner noted that life experiences since service, including job loss, relationship issues, and legal problems, may have also resulted in the progression of major depressive disorder. The examiner noted that there was a possible suicide attempt in service in March 1978 when the Veteran was treated for consumption of diesel fuel. The examiner noted that there was no indication that the Veteran suffered significant medical complications as a result of the incident and was not referred for mental health services at that time. 

The October 2017 medical opinion concluded that the Veteran’s pre-existing psychiatric disorder may have been exacerbated by events in service, including a groin injury and a back injury. The examiner further opined that the Veteran’s ingestion of fuel during service may have been a suicide attempt, although he did not receive further mental health treatment at that time. Given this opinion, the Board finds that the record does not show by clear and unmistakable evidence that the Veteran's preexisting depressive disorder was not aggravated during service. Resolving all doubt in favor of the Veteran, the probative evidence of record demonstrates that an acquired psychiatric disability preexisted service and was aggravated by service beyond the natural progress of the disease. Accordingly, service connection for an acquired psychiatric disorder, diagnosed as major depressive disorder, is warranted. 

2. Service connection for residuals of epididymo-orchitis, originally claimed as a groin injury, is denied. 

The Veteran contends that a current condition is related to a left testicle injury that occurred in basic training. See June 2007 Statement. 

The AOJ has found that the Veteran was diagnosed with orchitis and epididymitis during service in May 1976. 

A May 1976 entry in the service treatment records reflects that the Veteran complained of pain in the groin area and painful left scrotum for five days. Examination revealed that the left scrotum was swollen with a palpable lump. The Veteran was referred to the urology clinic.

A urology clinic treatment note shows that the Veteran reported groin strain for three days. He was diagnosed with acute epididymo-orchitis, left. There were no other complaints about a groin injury during service. The February 1979 separation examination noted a history of prostatitis with epididymitis without sequelae. 

A November 1979 reserve treatment record reflects that the Veteran reported a groin injury in 1976 with no subsequent treatment. A June 1982 reserves examination did not show any complaints or findings of a groin condition. 

A January 1997 treatment record reflects that the Veteran complained of a swollen scrotum and tender right testicle. He was diagnosed with right orchitis. 

An October 1998 treatment record reflects a diagnosis of epididymo-orchitis. 

An October 2017 VA examiner reviewed the Veteran’s claims file, noting the above cited medical evidence. The examiner opined that the Veteran does not have a diagnosis of residuals of epididymo-orchitis and the claimed condition is less likely than not related to the epididymitis and prostatitis noted in May 1976. The examiner noted that the Veteran had not had any treatment for this condition since 1998 and had a normal male reproductive examination. 

The United States Court of Appeals for Veterans Claims (Court) held that the requirement of the existence of a current disability is satisfied when a veteran has a disability at the time he files his claim for service connection or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); see also Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that a recent diagnosis of disability prior to the Veteran filing a claim is relevant evidence that must be considered).

The record does not contain competent medical evidence showing that the Veteran has been diagnosed with or received treatment for epididymo-orchitis, at any time during or pertinent to the appeal period. See McClain, supra; Romanowsky, supra. Although he was diagnosed with prostatitis with epididymitis during service and was treated for epididymo-orchitis after service, the evidence does not show a diagnosis of epididymo-orchitis during the pendency of his service connection claim from June 2007 until the present. In the absence of competent evidence of a current epididymo-orchitis disability, the preponderance of the evidence is against the claim, and the benefit-of-the-doubt doctrine is not for application. 38 U.S.C. § 5107 (b).

REASONS FOR REMAND

1. Service connection for back disability is remanded.

The issue of entitlement to service connection for a back disability is remanded to correct a duty to assist error that occurred prior to the September 2018 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) obtained an October 2017 medical opinion prior to the September 2018 rating decision on appeal. The October 2017 VA examiner diagnosed degenerative arthritis of the spine. However, this medical opinion does not provide an adequate rationale regarding whether the Veteran’s low back disability had its onset in service or is otherwise related to service. The October 2017 VA examination did not address whether the Veteran’s back disability was aggravated during a period of INACDUTRA. Of note, treatment records during the Veteran’s reserve service reflect complaints of back pain. A January 1998 treatment record reflects a diagnosis of chronic low back pain. In March 1998, the Veteran reported a history of backache for 19 years. 

The matter is REMANDED for the following action:

Obtain a medical opinion from an appropriate clinician regarding whether the Veteran’s back was at least as likely as not (i) incurred in or aggravated by active service; (ii) is a result of a disease or injury incurred or aggravated during a period or periods of ACDUTRA; or (iii) is a result of an injury incurred or aggravated during a period or periods of INACDUTRA; or is otherwise related to active service.

(a) The examiner should consider the Veteran’s complaints of back pain during his active service from May 1976 to May 1979.

(b) The examiner should consider treatment records dated in January 1998, which noted chronic back pain and a March 1998 treatment record which noted a 19-year history of backaches.

(c) The examiner’s attention is directed to a May 2016 service department memorandum, which indicates that the Veteran had periods of reserve service from December 2, 1997 to June 11, 1998 and from June 12, 1998 to November 30, 1999. 

 

JENNIFER HWA

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Catherine Cykowski