Citation Nr: 1706064 
Decision Date: 02/15/17 Archive Date: 03/03/17

DOCKET NO. 09-18 290 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUE

Entitlement to service connection for a low back disability. 


REPRESENTATION

Veteran represented by: Lori K. Elliott, Attorney


ATTORNEY FOR THE BOARD

M. Espinoza, Associate Counsel 


INTRODUCTION

The Veteran had active service from March 1973 to December 1973.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio.

The Veteran was scheduled for a Travel Board Hearing before the Board to be conducted on March 26, 2011; however, he failed to appear. In correspondence received three days before the date of the scheduled hearing, the Veteran's representative filed a motion to reschedule the hearing due to the Veteran's current hospitalization. A video-conference hearing was requested at the Cincinnati, Ohio RO or Louisville, Kentucky RO, due to the distance and expense of traveling to the Cleveland, Ohio RO. Reports of the Veteran's admission to a VA facility from March 5, 2012 to March 9, 2012, and continuing admission from March 13, 2012, for opiate dependence detoxification, were of record in March 2012. The request to reschedule the hearing was denied in May 2012 based on a finding that good cause had not been shown for the Veteran's failure to appear for his scheduled hearing. Under the applicable regulation, if an appellant fails to appear for a scheduled hearing and a request for postponement has not been received and granted, the case will be processed as though the request for a hearing had been withdrawn. 38 C.F.R. § 20.702 (d) (2016). Accordingly, this Veteran's request for a hearing was deemed withdrawn, and a Board decision was issued in July 2012. 

In July 2012, the Board reopened the claim of entitlement to service connection for spondylolisthesis at L5-S1 with radiculopathy and remanded the reopened claim for additional development and adjudication on the merits, de novo. It now returns for appellate review. 

The Board has recharacterized the Veteran's service connection claim for spondylolisthesis at L5-S1 with radiculopathy more broadly to include any low back disability. See Brokowski v. Shinseki, 23 Vet. App. 79 (2009) (holding that a claimant may adequately identify the disability for which compensation benefits are sought by referring to a body part or system that is disabled, or by describing the symptoms of that disability).



FINDINGS OF FACT

1. The presumption of soundness on induction is rebutted as clear and unmistakable evidence of record establishes that the Veteran's spondylolisthesis at L5-S1 is a congenital disease which existed prior to service and as clear and unmistakable evidence of record establishes that such was not permanently increased in severity during service beyond natural progression.

2. The preponderance of the evidence is against a finding that spondylolisthesis at L5-S1 chronically increased in service beyond natural progression. 

3. The preponderance of the evidence of record is against a finding that it is at least as likely as not that the Veteran's degenerative disc disease of the lumbar spine is etiologically related to his military service.


CONCLUSION OF LAW

The criteria for service connection for low back disability, currently diagnosed as spondylolisthesis at L5-S1 and degenerative disc disease, have not been met. 38 U.S.C.A. §§ 1101, 1110, 1111, 1153, 5107 (West 2015); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, and 5126 (West 2015); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2016); see also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). A VA letter issued in May 2005, prior to initial adjudication of the claim, provided notice with respect to service connection; however, this notice did not address assignment of a disability evaluation and effective date considerations in the event of award of the benefit sought. In November 2007, subsequent to the initial adjudication of the claim, VA provided the Veteran with notice of how disability evaluations and effective dates are assigned. While complete notice was not provided prior to the initial adjudication of the claim, the notice timing defect was cured by readjudication of the claim after full notice was provided, most recently in an August 2016 supplemental statement of the case. Hence, the Veteran is not prejudiced by any technical notice defect that may have occurred earlier, nor is it otherwise alleged. Prickett v. Nicholson, 20 Vet. App. 370 (2006).

VA statisfied its duty to assist the Veteran under VCAA by gathering relevant records. VA has a duty to assist in obtaining the Veteran's service treatment records and other relevant records. 38 U.S.C.A. § 5103A(c); 38 C.F.R. § 3.159(c). The Veteran's service treatment records, VA treatment records and records from the Social Security Administration have been obtained and associated with the claims file. 

Additionally, pursuant to the July 2012 Board remand, updated VA treatment records were obtained, and in July 2015 correspondence, the Veteran was provided a VA Form 21-4142 for authorization of any medical providers, to include Mercy Hospital, to release records of treatment of the Veteran to VA; however, the Veteran did not respond to this request. As such, another remand to obtain such records is not warranted.

Also pursuant to the July 2012 Board remand, a back conditions examination was afforded to the Veteran in April 2016. The April 2016 VA examiner interviewed the Veteran and conducted a physical examination, recorded clinical findings, documented the Veteran's subjective complaints, diagnosed spondylolisthesis and degenerative disc disease, addressed the likely etiology of the Veteran's spondylolisthesis and provided adequate supporting explanation and rationale for all conclusions reached with respect to the spondylolisthesis diagnosis. The April 2016 back conditions examination was thorough and all necessary evidence and testing was considered by the examiner with respect to the diagnosis of spondylolisthesis. Therefore, the Board finds the April 2016 examination report to be adequate with respect to the diagnosis of spondylolisthesis. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). 

Although the April 2016 VA back conditions examination did not provide an etiological opinion with respect to the diagnosis of degenerative disc disease, such is not warranted in this case. There is no probative evidence in the claims file which suggests that the Veteran's degenerative disc disease is related to his active service. According, a VA opinion is not warranted for such. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159; see McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006). 

As such, the July 2012 Board remand directives specific to obtaining medical records and an examination were accomplished for the Veteran's claim for service connection for a low back disability. An August 2016 supplemental statement of the case was most recently issued to the Veteran after RO compliance with the July 2012 Board remand directives. Thus, there has been substantial compliance with the remand instructions for the claim regarding service connection for a low back disability. Stegall v. West, 11 Vet. App. 268 (1998). As such, appellate review may proceed without prejudice to the Veteran.

II. Merits of the Claim

A. Legal Criteria 

Generally, service connection may be established for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1131 (West 2015); 38 C.F.R. §§ 3.303, 3.304 (2016). To establish service connection on a direct incurrence basis, the Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). In service connection claims consideration must be given to all pertinent medical and lay evidence. 38 U.S.C.A. § 1154 (a) (West 2016); 38 C.F.R. § 3.303 (a).

In addition, certain chronic diseases, such as arthritis, may be presumed to have been incurred in, or aggravated by, service if the disease becomes manifest to a compensable degree within one year of separation from qualifying military service. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2015); 38 C.F.R. §§ 3.307, 3.309 (2016). Additionally, service connection on the basis of continuity of symptomatology can be established for the chronic diseases specified at 38 C.F.R. § 3.309 (a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

When no preexisting condition is noted upon entry into service, a veteran is presumed to have been in sound condition as a general matter. VA has the burden to rebut this presumption of soundness through clear and unmistakable evidence that the disability both preexisted service and was not aggravated by service. The second prong, lack of aggravation, may be rebutted through clear and unmistakable evidence either that (1) there was no lasting increase in disability during service, or (2) any such increase was due to the natural progression of the condition. Quirin v. Shinseki, 22 Vet. App. 390, 396-97 (2009); Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Horn v. Shinseki, 25 Vet. App. 231, 234-35 (2012). 

However, VA distinguishes between congenital or developmental "defects" and "diseases" for service connection analysis. A congenital or developmental "defect" is not considered a disease or injury for VA purposes; therefore, it may not be service-connected as a matter of law, and the general presumption of soundness upon entry into service does not apply to such defects. 38 U.S.C.A. §§ 1110, 1111; 38 C.F.R. §§ 3.303 (c), 3.304(b), 4.9; see also Quirin, 22 Vet. App. at 396-97; Terry v. Principi, 340 F.3d 1378, 1385-86 (Fed. Cir. 2003). Nevertheless, if a congenital or developmental defect is subject to a superimposed disease or injury during service, service connection will be granted for any resultant additional disability. VAOPGCPREC 82-90 (July 1990) at p.3. 

Additionally, if it is determined during service that a veteran suffers from a congenital disease, as opposed to a defect, VA cannot simply assume that, because of its congenital nature, the disease must have preexisted service. That is, the presumption of soundness still applies to congenital diseases that are not noted at entry. Quirin, 22 Vet. App. at 396-97. VA's Office of General Counsel confirmed that the existence of a congenital hereditary disease under 38 C.F.R. § 3.303 (c) does not always rebut the presumption of soundness and that service connection may be granted for congenital hereditary diseases which either first manifest themselves during service or which preexist service and progressed at an abnormally high rate during service. See VAOPGCPREC 67-90; 55 Fed. Reg. 43,253 (1990).

B. Analysis 

As set forth in his April 2005 claim, the Veteran stated he did not have a back injury prior to active service, and asserted that the injury to his back, and now service-connected foot (right second toe fracture), occurred when he and several others were carrying a hydraulic unit for an aircraft weighing about 1500 lbs and the T-bar snapped causing the unit to fall on his toe and throw him back. The Veteran stated this incident occurred when he was aboard the USS Independence in August 1973.

As an initial matter, the existence of a present disability is established through the Veteran's medical treatment records and April 2016 VA examination report produced during the course of his appeal. A January 2007 VA treatment record provided an impression of postsurgical changes at L4, L5, S1 and grade 1 anterolisthesis of L5 over S1. A September 2009 VA treatment record provided an impression of lumbar scoliosis, fusion of posterior elements of L4-L5 and anterolisthesis of L5 on S1. A February 2010 VA treatment record noted an impression of disc disease of the lumbar spine. A June 2014 VA treatment record provided an impression of prior dorsal decompression and osseous fusion changes at L4-5 and L5-S1, grade 2 anterior spondylolisthesis at L5-S, mild L4-5 disc space narrowing and moderate bilateral facet joint hypertrophy at L3-4. The April 2016 VA examiner endorsed diagnoses of spondylolisthesis at L5-S1 and degenerative disc disease. Thus, the Board finds the Veteran has current back disability best characterized as spondylolisthesis at L5-S1 and degenerative disc disease. The Board will next address the question of whether the evidence demonstrates that the Veteran's current back disabilities, diagnosed as spondylolisthesis and degenerative disc disease, are related to his period of service.

Spondylolisthesis

A back disability, to include spondylolisthesis, was not noted on the Veteran's February 1973 service entrance examination report. Indeed, the February 1973 service entrance examination report noted the spine was clinically normal. As such, the Veteran is presumed to have been sound at entrance to service as to a low back disability. 

In this case, however, in November 1973, a Medical Board report noted that the Veteran was seen in November 1973 with complaints of pain in his low back extending into the lower right extremity accompanied on occasion by dysesthesias in the right leg and noted that the Veteran's symptoms had recurred over the past year and were aggravated by standing and heavy lifting. The reported medical history did not reference a low back injury. The November 1973 Medical Board diagnosed spondylolisthesis of L5 on S1 with a 50 percent forward displacement of L5. The November 1973 Medical Board further noted the Veteran had developmental anomaly of his lumbosacral spine which caused significant instability and predisposed the Veteran to repeated attacks of low back ache but also found the condition existed prior to enlistment and had not been aggravated by his tour of active duty. The Veteran was informed of the Board's findings, and did not desire to submit a rebuttal statement. The Veteran was discharged from active service as a result of this finding. Therefore, although a low back disability was not noted on the Veteran's entrance examination, the evidence, considered as a whole, constitutes clear and unmistakable evidence that the Veteran's spondylolisthesis preexisted service. 

The Board also finds that there is clear and unmistakable evidence that there was no chronic increase in the underlying severity of the disorder in service. In this case, there is competent medical evidence that the Veteran's spondylolisthesis did not undergo an increase in severity during his service. As noted above, the April 2016 VA examiner stated based on the currently available evidence of record, the Veteran's spondylolisthesis of a 50 percent forward displacement of L5 on S1 was preexistent to active duty and was not aggravated by service as there were no reported injuries to his lower back during service. The April 2016 VA examiner noted the Veteran was released from service by a Medical Evaluation Board due to the condition and it was stated that the condition of the spondylolisthesis at L5-S1 was congenital as he presented as being sound at his entrance medical examination with no prior back injury. The April 2016 VA examiner opined that there was clear and unmistakable evidence that the Veteran's spondylolisthesis at L5-S1 was not caused by or a result of service but was congenital and was not aggravated to a permanent degree by the Veteran's military service beyond that which would be due to the natural progression of the disability as demonstrated by the evidence of record. 

The April 2016 VA examiner reviewed the Veteran's service medical records and considered the Veteran's statements. As is true with any piece of evidence, the credibility and weight to be attached to the examiner's opinion are within the province of the adjudicator. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion. See Nieves-Rodriguez, 22 Vet. App. 295 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000). 

The Board finds the April 2016 opinion to be highly probative. The April 2016 VA examiner specifically noted that the Veteran reported he injured his back in 1973 when a hydraulic unit weighing 1500 lbs. fell and threw him towards his left side and that he landed on a cat walk. Moreover, the examiner explicitly noted a review of the entire claims file was conducted, which included additional lay statements from the Veteran. Thus, it is clear from the thorough review of the claims file that the examiner relied on the relevant information as well as medical knowledge and expertise to draw conclusions and reach opinions. Given the examiner's consideration of the medical records and lay statements, unequivocal and conclusive opinions, and clear reasoning for the conclusions, the Board finds the examiner's opinion to be highly probative. There is no other medical opinion of record. Thus, the evidence clearly and unmistakably shows that the Veteran's spondylolisthesis at L5-S1 was not aggravated during service.

As the presumption of soundness on entrance to service has been rebutted, service connection for spondylolisthesis may not be established based on incurrence in service. Rather, service connection may be established on the basis of chronic aggravation in service. As noted above, the April 2016 VA examiner concluded that the Veteran's spondylolisthesis at L5-S1 was not aggravated to a permanent degree by the Veteran's military service beyond that which would be due to the natural progression of the disability. Again, there is no other medical opinion of record. Thus, the preponderance of the evidence is against a finding that the Veteran's spondylolisthesis at L5-S1 was aggravated due to service.

Degenerative Disc Disease

Next, the Board will address whether the Veteran's diagnosed degenerative disc disease of the lumbar spine is related to his period of active duty service. Degenerative disc disease of the lumbar spine was not noted on examination for entrance to service. Indeed, the February 1973 service entrance examination report noted the Veteran's spine was clinically normal. As such, the Veteran is presumed to have been sound upon entrance to service as to degenerative disc disease of the low back. There is no evidence of record that degenerative disc disease of the low back pre-existed service. As such, there has been no demonstration by clear and unmistakable evidence that degenerative disc disease pre-existed service and was not aggravated by service. Hence, the presumption of soundness on entrance to service as to degenerative disc disease of the low back has not been rebutted, and entitlement to service connection for degenerative disc disease of the low back may be considered on the basis of incurrence in service. 

The claimed disorder is not a chronic disease enumerated under 38 C.F.R. § 3.309 (a). Therefore, the provisions of 38 C.F.R. § 3.303 (b) are not for application. See Walker. 

The Veteran's service records make no reference to an in-service fall, a lumbar spine or back injury, or other spinal disability. As noted above, the November 1973 Medical Board report only endorsed a diagnosis of spondylolisthesis. Furthermore, August 1973 deck logs from the USS Independence do not indicate a fall and subsequent inquiry by the Veteran or any other servicemen as described by the Veteran in his April 2005 claim. However, the deck logs do indicate treatment for other servicemen such as an August 1, 1973 record which indicated another serviceman was placed in sick bay for treatment for a foreign object in his left eye that in August 17, 1973 another service member suffered a sprained ankle while trying to board a public bus in town. 

As noted above, the Veteran advanced that he had sustained recurrent back injury residuals of a 1973 in-service fall. However, the Board reiterates that the Veteran's service treatment records make no reference to a lumbar spine or back injury. Moreover, the April 2016 VA examiner found degenerative disc disease was diagnosed in June 2014, decades after separation from service. Although as noted above, a February 2010 VA treatment record also noted degenerative disc disease, there is no record of degenerative disc disease being diagnosed proximate to separation from service. For example, a December 1982 VA treatment record, 9 years after separation from service, diagnosed spondylolisthesis at the L5-S1 level but did not endorse any other diagnoses. Similarly, a March 1983 VA treatment record diagnosed grade II L5-S1, spondylolisthesis, but did not endorse any other diagnoses with regard to the Veteran's back, including degenerative disc disease. No competent medical professional has attributed the Veteran's degenerative disc disease to active service. Moreover, other evidence indicates back pain was due to post-service injuries or other causes. For instance, a January 1992 VA treatment record noted the Veteran had back pain for two days. An August 2001 VA treatment record documented the Veteran complained of two weeks of right sided lumbar back pain with radiation to right leg. A May 2002 VA treatment record noted an exacerbation of back pain secondary to some anxiety neurosis as secondary to a situational problem. A January 2003 VA treatment record reported the Veteran stated his back was killing him but he did not know what he did to it. A June 2014 VA treatment record stated in pertinent part, that the reason for the spine imaging was the Veteran fell and injured both his upper sacrum and right mid dorsum. 

As noted above, Veteran asserts that he sustained recurrent back injury residuals as the result of an in-service 1973 fall. The Veteran's reports of low back pain since 1973 are also reflected in VA treatment records, such as a June 2010 VA treatment record. In a June 2002 VA treatment record the Veteran claimed he was hospitalized for 106 days while in the Navy due to a back injury. While the Veteran is clearly competent to state that he experienced an in-service fall and hurt his back, the absence of any objective reference to such a fall or treatment for such in the record undermines the credibility of his subjective statements. Even conceding for the sake of argument that the claimed in-service fall and back injury occurred, there is no competent evidence that the Veteran's diagnosed degenerative disc disease is related to such trauma. The Veteran's lay statements do not constitute competent evidence as to the etiology of his diagnosed degenerative disc disease. The Veteran is not competent to offer an opinion concerning the etiology of his degenerative disc disease as such a determination requires medical training and the interpretation of electrodiagnostic testing, such as X-ray and MRI studies, which the Veteran cannot perform himself. The Veteran is not a physician. He has not offered any form of medical qualification. The question of the etiology of such a disability is not amenable to observation alone and is too complex to be addressed by a layperson. Such a relationship is the subject of extensive training and research by medical professionals. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

The Veteran's degenerative disc disease has not been shown to be related to his claimed in-service fall or to have otherwise originated during active service. Therefore, service connection for degenerative disc disease is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).


ORDER

Entitlement to service connection for a back condition, to include spondylolisthesis at L5-S1 and degenerative disc disease of the lumbar spine, is denied




____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs