﻿Citation Nr: 18142041
Decision Date: 10/15/18 Archive Date: 10/12/18

DOCKET NO. 15-42 564
DATE: October 15, 2018
ORDER
Service connection for costochondritis is denied.
Service connection for right hip disorder is denied. 
Service connection for right knee disorder is denied.
Service connection for pes planus of the right foot is denied. 
A rating in excess of 10 percent for residuals of a left metatarsal stress fracture with plantar fasciitis is denied. 
An effective date earlier than March 4, 2013, for the grant of service connection for depressive disorder (claimed as depression and anxiety) with alcohol use disorder is denied.
REMANDED
Entitlement to service connection for a lumbar spine disorder is remanded. 
Entitlement to service connection for a left knee disorder is remanded. 
Entitlement to a rating in excess of 10 percent for gastroesophageal reflux disease (GERD) is remanded.
Entitlement to a rating in excess of 50 percent for depressive disorder with alcohol use disorder is remanded. 
FINDINGS OF FACT
1. Although costochondritis was diagnosed during service, the Veteran is not currently diagnosed with costochondritis or chest wall pain causing functional impairment. 
2. The Veteran does not have a right hip or right knee disability; nor does the Veteran’s pain amount to a functional impairment.
3. Pes planus was noted at service entry; the Veteran’s preexisting right foot pes planus did not permanently increase in severity during service.
4. The Veteran’s service-connected left metatarsal stress fracture with plantar fasciitis is manifested by moderate symptoms, but not moderately severe symptoms.
5. VA received the Veteran’s initial claim for service connection for a psychiatric disorder (claimed as anxiety) on March 4, 2013.
CONCLUSIONS OF LAW
1. The criteria for entitlement to service connection for costochondritis/chest wall pain are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).
2. The criteria for entitlement to service connection for right hip disability are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).
3. The criteria for entitlement to service connection for right knee disability are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).
4. The criteria for service aggravation of right foot pes planus are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.306 (2017).
5. The criteria for a rating in excess of 10 percent for residuals of a left metatarsal stress fracture with plantar fasciitis are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.71a, 4.72, Diagnostic Code 5284 (2017).
6. The criteria for the assignment of an effective date prior to March 4, 2013, for the grant of service connection for a psychiatric disorder are not met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from March 1987 to December 1994. 
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from the January 2013 and December 2015 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California.
In September 2018, the Board notified the Veteran that additional VA medical evidence had been added to the claims file since the last RO adjudication. In response, the Veteran waived his right to have the case remanded to the RO for review of this additional evidences. The Veteran asked the Board to proceed with the adjudication of his appeal.
Service Connection Laws and Regulations
Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Only chronic diseases listed under 38 C.F.R. § 3.309 (a) (2017) are entitled to the presumptive service connection provisions of 38 C.F.R. § 3.303 (b). Walker v. Shinseki, 708 F.3d 1331 Fed. Cir. 2013).
Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The U.S. Court of Appeals for Veterans Claims (Court) has held that “Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).
In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57(1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (“although interest may affect the credibility of testimony, it does not affect competency to testify”).
Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment, including by a veteran. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner’s opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the veteran); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that the Board may reject a medical opinion based on an inaccurate factual basis).
When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.
Costochondritis
The Veteran generally maintains that service connection for costochondritis is warranted.
Service treatment records show that in September 1993 the Veteran was seen for non-acute chest and back pain. An assessment of costochondritis was noted; however, subsequent treatment records are negative for any further complaints or diagnoses of costochondritis. In an October 1994 Report of Medical Examination, conducted at service separation, a clinical evaluation of the Veteran’s chest was normal and there was no indication of chest wall pain or disability. In a corresponding October 1994 Report of Medical History, completed by the Veteran at service separation, the Veteran indicated that he had shortness of breath after “lifting weights the wrong way,” however, the Veteran did not report any chest wall pain or costochondritis. 
Moreover, the medical and lay evidence dated since the date of claim and during the pendency of the appeal does not demonstrate a current disability. According to December 2012 and March 2015 VA examination reports, the examiner noted the Veteran’s historical 1993 diagnosis of costochondritis, but no current diagnosis. The remaining evidence of record, to include VA treatment records, does not show a diagnosis of costochondritis. 
To the extent that the Veteran currently reports chest wall pain, he is competent to do so; however, he is not competent to diagnose costochondritis because he is not shown to possess the requisite medical training. Additionally, there is entirely no evidence indicating or even suggesting that any current chest wall pain causes any functional impairment. See Saunders v. Wilkie, 2018 U.S. App. LEXIS 8467 (2018), wherein the United States Court of Appeals for the Federal Circuit (Court) held that pain alone can constitute a disability for VA purposes when such pain amounts to functional impairment of earning capacity. 
As the evidence does not show the presence of claimed disability, the claim must be denied. Brammer, 3 Vet. App. at 225. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.
Right Hip and Right Knee
After a thorough review of the record, the Board finds that service connection is not warranted for the Veteran’s claimed right hip and right knee disability. The evidence simply does not show that such conditions are present. In this regard, the Board notes that Congress has specifically limited service connection to instances where there is current disability that has resulted from disease or injury. In the absence of a current disability, the analysis ends, and the claims for service connection for a right hip or right knee disability cannot be granted. See Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer, supra. 
In making this finding, the Board has considered VA treatment records which show complaints of hip pain. However, these complaints have been related to the Veteran’s spine disorder. An April 2012 statement from Dr. M. K. noted that the Veteran was being treated for low back pain and stiffness “which radiates into his right hip and leg.” The post-service VA and private medical evidence does not include a distinct diagnosis pertaining to the right hip or right knee. 
In this case, the Board does not dispute the Veteran’s contentions that he experiences pain in his right hip and right knee pain. However, the evidence of record does not show that the Veteran’s pain amounts to a functional impairment of earning capacity. See Saunders, supra. In particular, the December 2012 VA examination report reflects full range of motion of the right knee, to include upon repetitive-use testing. In March 2016 and October 2016 VA physical therapy notes, right hip flexion was 4/5 and 5/5, respectively. In the October 2016 VA record, the Veteran’s right knee flexion and extension were normal (5/5). The Veteran was noted to have “no difficulty” or pain with heel walk and toe walk. Sensation to light touch was also intact. The Board finds that the evidence simply does not show that the Veteran’s reported right hip or right knee pain amounts to functional impairment to establish a disability. 
Based on a review of the foregoing evidence, and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran’s claims for service connection for a right hip and a right knee disability. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the Veteran’s claims for service connection, that doctrine is not helpful to the Veteran. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.
Right Foot
The Veteran seeks service connection for a right foot disability. The Board notes that the Veteran has already been awarded service connection for a left foot disability. 
The Veteran was diagnosed with mild, asymptomatic pes planus during his induction physical in February 1987. Therefore, his pes planus was “noted” at entrance into service, and the presumption of soundness at entry into service does not attach. 38 U.S.C. § 1111.
As the Veteran’s pre-existing right foot pes planus was noted at the time of entry into service, service connection for bilateral pes planus may be granted only if it is shown that the right foot pes planus worsened in severity beyond its natural progression during service, i.e., was aggravated by service. 38 U.S.C. § 1153; 38 C.F.R. § 3.306.
If any in-service aggravation of a preexisting disorder noted at service entrance is shown, the in-service evidence of aggravation is considered sufficient to allow for service connection unless there is clear and unmistakable evidence that the disorder was not permanently aggravated beyond the natural progression of the condition during service. 38 C.F.R. § 3.306. In deciding a claim based on aggravation, after having determined the presence of a preexisting condition, the Board must first determine whether there has been any measured worsening of the disability during service, and then whether this constitutes an increase, permanent in nature, in the disability. Browder v. Brown, 5 Vet. App. 268, 271 (1993). 
The primary question then is whether the preexisting right foot pes planus is shown to have increased in severity during active service. In explaining the meaning of an increase in disability, the Court has held that “temporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered ‘aggravation in service’ unless the underlying condition, as contrasted to symptoms, is worsened.” Hunt v. Derwinski, 1 Vet. App. 292, 297 (1992); see also Davis v. Principi, 276 F.3d 1341, 1346 (Fed. Cir. 2002) (explaining that, for non-combat veterans, a temporary worsening of symptoms due to flare ups is not evidence of an increase in disability).
The evidence does not show that the Veteran’s preexisting right foot pes planus that was noted at entrance into service increased in severity during service.
Service treatment records include a March 1987 note that the Veteran was seen for a persistent blister on the left heel. At that time, the Veteran also complained of right lateral foot pain. A tailor’s bunion was noted on the right foot. The Veteran was prescribed a blister kit and foam sleeve. There was no indication that the Veteran’s right foot pes planus caused the Veteran’s foot pain or other symptoms. The remaining service treatment records are absent of any complaints, diagnosis, or treatment pertaining to the Veteran’s right foot. Moreover, in an October 1994 Report of Medical Examination, conducted at service separation, a clinical evaluation of the Veteran’s feet was normal and there was no indication of a worsened right foot pes planus disability. In a corresponding October 1994 Report of Medical History, completed by the Veteran at service separation, the Veteran specifically indicated that he was in “excellent health.” 
A post-service VA foot examination dated in December 2012 also addresses the Veteran’s right foot pes planus disorder. The examiner reviewed the claims file and opined that the Veteran’s right foot disorder, which pre-existed service entrance, was not aggravated beyond its natural progression during service. The examiner indicated that the Veteran stated that he was in excellent health at service separation and the in-service physician did not make any notations at service separation. The examiner also stated that the Veteran worked for 16 years after service as a police officer in a physical capacity. 
Based on the foregoing, the Veteran’s right foot pes planus did not increase in severity during service. Because the evidence does not demonstrate worsening of pes planus during service (preponderance of the evidence is against a finding of worsening during service), the presumption of aggravation does not arise in this case, so the burden on VA to rebut the presumption (by clear and unmistakable evidence) does not arise. See 38 U.S.C. § 1153; 38 C.F.R. § 3.306.
For these reasons, the Board finds that the weight of the evidence demonstrates that the Veteran’s pre-existing right foot pes planus that was noted upon service entrance did not increase in severity during (i.e., was not aggravated by) service as defined by 38 U.S.C. § 1153 and 38 C.F.R. § 3.306. Because aggravation by service of the preexisting right foot pes planus is not demonstrated, the benefit of the doubt doctrine does not apply, and the claim for service aggravation for right foot pes planus must be denied. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

Disability Ratings-Laws and Regulations
Disability ratings are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher rating will be assigned if the disability more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. See 38 C.F.R. § 4.3. Staged ratings are appropriate when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999).
When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a (musculoskeletal system) or § 4.73 (muscle injury); a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a [or 4.73] criteria.”).

Left Foot Disability
The Veteran essentially maintains that his service-connected left foot disability is more severe than what is contemplated by the currently assigned 10 percent rating. 
The Veteran’s disability is currently rated at 10 percent disabling under diagnostic code 5284, under which a variety of foot injuries may be rated. 38 C.F.R. § 4.71a, Diagnostic Code 5284 (2017). Diagnostic Code 5284 may be applied to foot disorders other than those for which specific diagnostic criteria are otherwise set forth in the Rating Schedule. Under this diagnostic code, a 10 percent rating is assigned for moderate foot injuries, a 20 percent rating is assigned for moderately severe foot injuries, and a 30 percent rating is assigned for severe foot injuries. Diagnostic Code 5284 also allows for the assignment of a 40 percent rating for loss of use of the foot.
The words “moderate,” “moderately severe,” and “severe” are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all the evidence to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6 (2017).
The Veteran was afforded a VA foot examination in December 2012. At that time, he was diagnosed with left plantar fasciitis and a residual stress fracture of the left fifth metatarsal. Upon examination, the Veteran did not have Morton’s neuroma, hammertoes, metatarsalgia, hallux valgus, hallux rigidus, pes cavus, or malunion of the tarsal or metatarsal bones. The examiner specifically indicated that the Veteran’s other foot injury was of “moderate” severity. 
The Board notes that the December 2012 VA examiner conducted two VA foot examinations (i.e., for pes planus and for other miscellaneous foot disorders). Notably, although the Veteran was diagnosed with left foot pes planus, the examiner indicated that pes planus was unrelated to the left foot stress fracture and plantar fasciitis. The Veteran has also not been awarded service connection for left foot pes planus; as such, symptoms pertaining to left foot pes planus will not be considered when evaluating the Veteran’s disability. 
The remaining evidence of record does not address the severity of the Veteran’s service-connected let foot disability. 
The Board finds that a rating in excess of 10 percent, for the left foot disability is not warranted. As noted above, in order to warrant a rating in excess of 10 percent under Diagnostic Code 5284, evidence of a moderately severe foot injury must be demonstrated. The evidence of record demonstrates that the Veteran’s symptoms more closely reflect a moderate foot condition, rather than a moderately severe condition. During the VA examination discussed above, the Veteran reported pain on both heels, but no pain over the fifth metatarsal. As such, the Board finds the Veteran’s left foot fracture residuals and plantar fasciitis most closely approximates a 10 percent disability rating for moderate symptoms.
The Board has also considered the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.59, and the holdings in DeLuca have also been considered. However, an increased rating is not warranted during either period on appeal on the basis of functional loss due to pain or weakness in this case, as those symptoms are already contemplated by the criteria of Code 5284. The Veteran has also not reported any loss of motion in the left foot due to his symptoms. The Board finds that the Veteran’s symptoms are supported by pathology consistent with the assigned rating.
The Board further considered whether a higher rating was available under 38 C.F.R. § 4.71a, Diagnostic Codes 5276-5283. There is no indication that the Veteran has been diagnosed with hallux valgus or Morton’s neuroma, accordingly, Diagnostic Codes 5279 and 5280 are not applicable. 38 C.F.R. § 4.71a, Diagnostic Code 5279, 5280 (2017). With regard to the remaining Diagnostic Codes, they are not applicable because the evidence indicates that the Veteran does not have weak foot, claw foot, hallux rigidus, hammer toe, or nonunion or malunion of the tarsal or metatarsal bones. 38 C.F.R. § 4.71a, Diagnostic Codes 5277-5283 (2017). The Veteran’s pes planus has specifically been found to be unrelated to the service-connected left foot disabilities; as such, Diagnostic Code 5276 is also not applicable in this case. 
The Board finds that the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 10 percent for the left foot disability. In denying such higher ratings, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107 (2012); 38 C.F.R. §§ 4.3, 4.7 (2017).
Laws and Analysis for Effective Date for Psychiatric Disorder
In general, the effective date of an award based on an original claim for benefits is based on the filing of a claim for such benefits. 38 U.S.C. § 5110; 38 C.F.R. § 3.151. See Wells v. Derwinski, 3 Vet. App. 307 (1992). Benefits are generally awarded based on the date of receipt of the claim. 38 C.F.R. § 3.1 (r), 3.400. 
Specifically, with respect to service connection granted on a direct basis, such as the Veteran’s psychiatric disorder, governing regulation provides that the effective date will be the day following separation from active service or the date entitlement arose, if the claim was received within one year after separation from active duty; otherwise the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400 (b)(2)(i). All effective date determinations must be based upon the facts found, unless otherwise specifically provided. 38 U.S.C. §§ 5101, 5110; 38 C.F.R. § 3.400.
In this case, the Veteran initially filed a claim for service connection for anxiety on March 4, 2013. In a December 2015 rating decision, the RO granted service connection for depressive disorder (claimed as depression and anxiety) and awarded a 50 percent rating effective March 12, 2014. In a subsequent March 2017 rating decision, the RO assigned an effective date of March 4, 2013, as it found that clear and unmistakable error had been made in the previous rating decision. 
Although the Board acknowledges that the Veteran did file a claim for benefits on in May 2012, this claim pertained to orthopedic disabilities. There was no indication in the May 2012 claim that the Veteran was seeking service connection for a psychiatric disorder. 
A review of the remaining evidence of record does not show any other correspondence by the Veteran that may be construed as a formal or informal claim for service connection for a psychiatric disorder prior to March 4, 2013.
In sum, the earliest indication that the Veteran expressed his intent to pursue a claim for service connection for a psychiatric disability was the March 4, 2013 application. Thus, the preponderance of the evidence is against the Veteran’s claim for an earlier effective date for the grant of service connection for depressive disorder and the benefit sought must be denied.
REASONS FOR REMAND
Lumbar Spine
The Veteran maintains that he first injured his back in service and that his symptoms progressively worsened over the years. 
Service treatment records include an April 1991 note where the Veteran was seen for complaints of low back pain. During the evaluation, the Veteran reported occasional lumbar pain for the last 4 months. He indicated that he was squatting and felt pain in the right lumbar area, which radiated to the right leg. The in-service physician diagnosed the Veteran with a lumbar muscle strain and prescribed Motrin. In a follow-up treatment note, x-rays showed evidence of no osseous or disc space abnormalities. The diagnosis of lumbar musculoskeletal strain was continued. The remaining service treatment records are absent for a back injury or further treatment. 
The Veteran was afforded a VA spine examination in December 2012. The examiner diagnosed degenerative disc disease and arthritis, confirmed by x-rays. During the evaluation, it was noted that, after service, the Veteran worked as a police officer and went on permanent disability due to his back condition. Specifically, the Veteran reported that he was T-boned and fell off a motorcycle while serving as a police officer. The examiner opined that the Veteran’s back disorder was not related to service. In support of this opinion, the examiner stated that the Veteran was seen twice for low back pain in service; however, x-rays at that time were normal. Further, on service separation, the Veteran indicated that he was in excellent health and was not taking any medications. The examiner also noted that the Veteran joined the police academy after service and became a police officer. Moreover, the examiner stated that most police officers underwent a comprehensive physical on admission. The Veteran was able to function as police officer from 1995 to 2011. During his service as a police officer, the Veteran was involved in two accidents and sustained back injuries during his police work. 
The records reflect that the Veteran served and medically retired as a police officer due to a back disability. There is some question in the record as to whether the Veteran experienced back symptoms prior to his injuries sustained as a police officer or whether they are directly related to his post-service job injuries. As stated by the VA examiner, the Veteran may have received regular physical examinations during such employment, which may have relevant medical records. The Veteran was also on permanent medical disability from his work as a police officer. These records should be sought on remand.
Left Knee
The Veteran maintains that his left knee disorder is related to service. 
Service treatment records include an October 1993 treatment note where the Veteran was seen for a left knee injury. At that time, it was indicated that the Veteran had an inversion injury while playing football. The Veteran reported occasional, mild pain to the patella. An examination of the knee was normal and there was no effusion or laxity. 
In a December 2012 VA knee examination, the Veteran was diagnosed with “patella alta-congenital.” The examiner then opined that the Veteran’s left knee disorder was not related to service. 
Congenital or developmental defects are not diseases or injuries within the meaning of the applicable legislation. See 38 C.F.R. §§ 3.303 (c), 4.9 (2017); see also Winn v. Brown, 8 Vet. App. 510, 516 (1996). Such conditions are part of a life-long defect and are normally static conditions which are incapable of improvement or deterioration. See VAOGCPREC 67-90 (1990). VA regulations specifically prohibit service connection for a congenital or developmental defect, unless such defect was subjected to a superimposed disease or injury which created additional disability. See VAOGCPREC 82-90 (service connection may not be granted for defects of congenital, developmental or familial origin, unless the defect was subject to a superimposed disease or injury); see also Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993).
Although the examiner concluded the Veteran’s patella alta condition was “congenital” in nature, the examiner failed to address whether the congenital patella alta was a disease or defect and its relationship, if any, to military service. This is especially relevant since the Veteran complained of patella pain during service. As such, a remand is warranted for further clarification.
GERD Disability
The Veteran’s GERD is rated under Diagnostic Code (DC) 7346 for hiatal hernia. 38 C.F.R. § 4.114, DC 7346.
Under DC 7346, symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia, or other symptom combinations productive of severe impairment of health warrant a 60 percent rating; persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health, warrants a 30 percent rating; two or more of the symptoms for the 30 percent rating of less severity warrant a 10 percent rating. 38 C.F.R. § 4.114, DC 7346.
The Veteran was last afforded a VA examination in March 2015. At that time, the Veteran was noted to require the use of medication (omeprazole) 2-3 times a week. Symptoms included infrequent epigastric distress, reflux, and nausea. 
In a subsequent March 2016 VA treatment record it was noted that the Veteran’s GERD was “worsening” and that he now required 2 tablets of omeprazole daily. 
Given the medical evidence showing worsening symptoms of the Veteran’s GERD disability, the Board finds that a new VA examination is warranted to assist in determining the current severity of his GERD disability.
Psychiatric Disability
The Veteran is currently in receipt of a 50 percent rating for unspecified depressive disorder with alcohol abuse disorder. He maintains that a higher rating is warranted. 
The Veteran was most recently afforded a VA examination in February 2015. At that time, diagnoses of depressive disorder and alcohol abuse disorder were confirmed. The examiner also noted that it was possible to differentiate what symptoms were attributable to each diagnosis. 
The evidence subsequent to the February 2015 VA examination includes a February 2017 statement from the Veteran’s treating VA staff psychiatrist. At that time, it was noted that the Veteran was last evaluated in October 2016. It was further indicated that the Veteran had a “longstanding attention deficit history” and had been diagnosed with ADHD by multiple providers. The Veteran’s ADHD was noted to cause problems with staying on task, missing deadlines, procrastination, forgetfulness, distractibility, concertation, making careless efforts, difficulty grasping and retaining what he had read, problems with organization, and difficulty carrying out tasks to completion. The VA psychiatrist stated that the Veteran suffered from “irritability, depressive and anxiety symptoms due to his struggles and frustration with ADHD.” 
The Board notes that the Veteran has been diagnosed with ADHD, which is not a currently service-connected disability. As such, on remand, a new examination is required in order to assist in determining whether the Veteran’s symptoms due to the service-connected depressive disorder can be differentiated from those due to the nonservice-connected ADHD disorder. If the symptoms can be differentiated, then the examiner should state what symptoms are attributable to each disorder. See Mittleider v. West, 11 Vet. App. 181 (1998) (holding that where it is not possible to distinguish the effects of a nonservice-connected condition from those of a service-connected condition, the reasonable doubt doctrine dictates that all symptoms be attributed to the Veteran’s service-connected disability).
The matters are REMANDED for the following actions:
1. Request that the Veteran provide the necessary authorizations to obtain the medical records associated with his physicals and medical retirement from his civilian employment as a police officer, and then make arrangements to obtain any identified records.
2. Then, return the claims file to the examiner who provided the December 2012 VA knee examination (or another appropriate examiner if that examiner is unavailable) for an opinion which addresses the nature and etiology of the Veteran’s left knee patella alta disorder. The claims file, to include a copy of this Remand, must be made available to the examiner for review prior to the exam. The examiner is requested to address the following questions: 
(a.) Is the Veteran’s left knee patella alta condition a developmental defect or a developmental disease? For VA purposes, a defect differs from a disease in that the former is “more or less stationary in nature” while the latter is “capable of improving or deteriorating.” Quirin v. Shinseki, 22 Vet. App. 390, 394 (2009). 
(b.) If the Veteran’s left knee patella alta condition is a congenital defect, the examiner should render a medical opinion as to whether the evidence shows that it was at least as likely as not (a 50 probability or greater) subject to a superimposed disease or injury during military service that resulted in disability apart from the congenital or developmental defect. 
(c.) If the Veteran’s left knee patella alta condition is a congenital disease, the examiner should render a medical opinion as to whether the evidence shows it was aggravated (worsened) by the Veteran’s military service. If there was worsening, was this due to the natural progress of the disease? 
(d.) The examiner should provide a complete rationale for the conclusions reached. If the examiner cannot provide any of the requested opinions without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.
3. Schedule the Veteran for a VA examination in order to assess the current severity of his GERD disability. Any and all indicated evaluations, studies and tests deemed necessary by the examiner should be accomplished. The relevant documents in the record should be reviewed by the VA examiner in connection with the examination.
4. Schedule the Veteran for a VA psychiatric examination to determine the current nature and severity of his service-connected psychiatric disability. The record and a copy of this remand must be made available to the examiner. 
The examiner must:
Assess the current severity of the Veteran’s service-connected psychiatric disability, and in doing so, differentiate to the extent possible the Veteran’s symptoms due to the service-connected depressive disorder with alcohol abuse disorder with his symptoms associated with nonservice-connected ADHD (as diagnosed by his VA psychiatrist). See February 2017 statement from the Veteran’s treating VA staff psychiatrist. If the symptoms can be differentiated, then the examiner should state what symptoms are attributable to each disorder.
(Continued on the next page)
 
5. Thereafter, the remanded issues on appeal should be readjudicated. If the benefits sought on appeal are not granted, the Veteran and his representative should be provided with a supplemental statement of the case and afforded the appropriate time period within which to respond thereto.
 
S. B. MAYS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD R. Casadei, Counsel