﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/19 Archive Date: 10/30/19

DOCKET NO. 190301-2850
DATE: October 30, 2019

ORDER

New and relevant evidence has been received with respect to the previously-denied claim to establish service connection for a low back disability, and thus, readjudication of the claim is warranted.

Entitlement to service connection for a neck disability, diagnosed as a cervical strain, is granted.

Entitlement to service connection for bilateral trapezius strains is granted.

Entitlement to service connection for an acquired psychiatric disability, diagnosed as generalized anxiety disorder (GAD), with panic attacks and major depressive disorder (MDD), is granted.

Entitlement to service connection for gastroesophageal reflux disease (GERD) is granted.

Entitlement to service connection for obstructive sleep apnea is granted.

REMANDED

Entitlement to service connection for a low back disability is remanded.

Entitlement to service connection for radiculopathy of the left leg, to include as secondary to a low back disability, is remanded.

Entitlement to service connection for radiculopathy of the right leg, to include as secondary to a low back disability, is remanded.

FINDINGS OF FACT

1. New evidence was received after the final July 2000 rating decision that is relevant to the issue of entitlement to service connection for a low back disability.

2. The most probative evidence reflects that a cervical strain was incurred during the Veteran’s active duty.

3. The most probative evidence reflects that bilateral trapezius strains were incurred during the Veteran’s active duty.

4. The most probative evidence reflects that GAD with panic attacks and MDD were incurred during the Veteran’s active duty. 

5. The most probative evidence reflects that GERD was incurred during the Veteran’s active duty.

6. The most probative evidence reflects that obstructive sleep apnea was incurred during the Veteran’s active duty.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim to establish service connection for a low back disability are met. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501).

2. The criteria to establish service connection for a cervical strain have been met. 38 U.S.C. §§ 1110, 1112, 1116, 5107 (West 2002); 38 C.F.R. § 3.303 (2019).

3. The criteria to establish service connection for bilateral trapezius strains have been met. 38 U.S.C. §§ 1110, 1112, 1116, 5107 (West 2002); 38 C.F.R. § 3.303 (2019).

4. The criteria to establish service connection for GAD with panic attacks and MDD have been met. 38 U.S.C. §§ 1110, 1112, 1116, 5107 (West 2002); 38 C.F.R. § 3.303 (2019).

5. The criteria to establish service connection for GERD have been met. 38 U.S.C. §§ 1110, 1112, 1116, 5107 (West 2002); 38 C.F.R. § 3.303 (2019).

6. The criteria to establish service connection for obstructive sleep apnea have been met. 38 U.S.C. §§ 1110, 1112, 1116, 5107 (West 2002); 38 C.F.R. § 3.303 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Air Force from November 1990 to November 1994, to include in the Southwest Asia theater of operations during the Persian Gulf War. He also had additional service of an unverified nature and duration in the Air Force Reserves.

The rating decisions on appeal were issued in February 2016 and April 2017, and the Veteran initiated an appeal of the claims denied, therein. In July 2018, the Veteran elected to have all eligible appeals reviewed under the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). 

The Veteran elected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form in July 2018; however, the Agency of Original Jurisdiction (AOJ) subsequently reviewed the Veteran’s appeal and determined that additional evidentiary development was necessary, and thus, the AOJ unilaterally switched the Veteran’s appeal to the Supplemental Claim lane. In a February 2019 rating decision, the AOJ denied the Veteran’s appeal. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the AOJ.

The previously-denied claim to establish service connection for a low back disability been recharacterized to reflect the applicable evidentiary standard under RAMP and the AMA. 84 Fed. Reg. 138, 172, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. §§ 3.2501 (a)(1), 19.2). 

Service Connection and New and Relevant Evidence

VA will readjudicate a claim if new and relevant evidence is presented or secured. 84 Fed. Reg. 138, 169 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.156 (d)). "Relevant evidence is evidence that "tends to prove or disprove a matter in issue." VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). As the statutory definition of "relevant" does not require that the evidence relate to an unestablished fact necessary to substantiate the claim or raise a reasonable possibility of substantiating the claim; "new and relevant" evidence is a lower standard than the "new and material" evidence standard. 

Service connection may be established for a disability that results from personal injury that is suffered or disease contracted in the line of duty, in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131 (2002). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2019).

Generally, to establish service connection for a disability resulting from a disease or injury incurred in service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); cf. Gutierrez v. Principi, 19 Vet. App. 1, 5 (2004) (citing Hickson v. West, 12 Vet. App. 247, 253 (1999)).

Service connection is available for congenital diseases, but not defects, that are aggravated in service. Quirin v. Shinseki, 22 Vet. App. 390, 394 (2009); Monroe v. Brown, 4 Vet. App. 513, 515 (1993). In cases where the appellant seeks service connection for a congenital condition, the Board must indicate whether the condition is a disease or defect and discuss the presumption of soundness. Quirin, 22 Vet. App. at 394-97. It follows that, in such cases where a congenital condition is at issue, a VA medical opinion may be needed to determine whether the condition is a disease or defect, whether the presumption of soundness has been rebutted, and if so whether there was aggravation during service. Id. at 395 

The presumption of soundness does not apply to congenital defects because such defects "are not diseases or injuries" within the meaning of 38 U.S.C. §§ 1110 and 1111. See 38 C.F.R. § 3.303 (c); see also Quirin at 394 (holding that the presumption of soundness does not apply to congenital defects); Winn v. Brown, 8 Vet. App. 510, 516 (1996) (holding that a non-disease or non-injury entity such as a congenital defect is "not the type of disease- or injury-related defect to which the presumption of soundness can apply").

For purposes of determining whether a disorder is a congenital defect or a familial disease, VA interprets the term "disease" in 38 U.S.C. §§ 310, 331, and the term "defects" in 38 C.F.R. § 3.303 (c), as being mutually exclusive. "Disease" is broadly defined as any deviation from or interruption of the normal structure or function of any part, organ, or system of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown. See VAOPGCPREC 82-90 (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 385 (26th Ed. 1974)). On the other hand, the term "defect," viewed in the context of 38 C.F.R. § 3.303 (c), is defined as a structural or inherent abnormality or conditions which are more or less stationary in nature. As noted in VAOPGCPREC 82-90, a Federal court, in drawing a distinction between "disease" and "defect," indicated that disease referred to a condition considered capable of improving or deteriorating, whereas defect referred to a condition not considered capable of improving or deteriorating. See Durham v. United States, 214 F.2d 862, 875 (D.C. Cir. 1954); see also United States v. Shorter, 343 A.2d 569, 572 (D.C. 1975).

If it is determined during service that a veteran suffers from a congenital disease, as opposed to a defect, VA cannot simply assume that, because of its congenital nature, the disease must have preexisted service. That is, the presumption of soundness still applies to congenital diseases that are not noted at entry. Quirin at 396-97. VA must then show by clear and unmistakable evidence that the congenital disease preexisted service and was not aggravated thereby in order to rebut the presumption of soundness. Monroe v. Brown, 4 Vet. App. 513, 515 (1993). VA may not rely on a regulation as a substitute for the requirement that it rely on independent medical evidence. Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). VA's Office of General Counsel has also confirmed that the existence of a congenital hereditary disease under 38 C.F.R. § 3.303 (c) does not always rebut the presumption of soundness, and that service connection may be granted for congenital hereditary diseases which either first manifest themselves during service or which preexist service and progressed at an abnormally high rate during service. See VAOPGCPREC 67-90.

A preexisting injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306; Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the pre-service disability underwent an increase in severity during service. 38 C.F.R. § 3.306. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service. Id.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C. § 5107 (2002); 38 C.F.R. § 3.102 (2017); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996).

1. Whether new and relevant evidence has been received with respect to the previously-denied claim to establish service connection for a low back disability

In the present case, the AOJ denied the Veteran’s initial claim to establish service connection for a low back disability in a July 2000 rating decision on the grounds that the evidence did not show that the Veteran’s pre-existing low back disability was aggravated during his active duty. The Veteran did not appeal, no new and material evidence was received within a year of the rating decision, and the decision became final. 38 U.S.C. § 7105(c); 38 C.F.R. §§ 3.104, 3.156(b), 20.302, 20.1103 (2019); Bond v. Shinseki, 659 F.3d 1362 (Fed. Cir. 2011). 

In light of above, the claim may now be readjudicated on the merits only if new and relevant evidence has been received since the time of the prior adjudication. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501).

In the February 2019 rating decision, the AOJ made two favorable findings with respect to this claim. First, the Veteran’s August 1990 entrance examination notes lumbarization at S1 upon x-ray testing. Second, private treatment records from Dr. C.M.J.C. from June 2018 reflect a current diagnosis of degenerative disc disease of the lumbar spine without sciatica. The Board will accept these findings as favorable to the Veteran in the absence of clear and unmistakable evidence to the contrary.

In July 2018, within the appropriate period for evidence submission, the Veteran submitted a June 2018 statement from Dr. C.M.J.C. wherein the private clinician opined “It is my opinion that it is more likely than not that [the Veteran’s] military service has contributed to the degeneration in his lumbar spine, the symptoms he is currently experiencing[,] and his ongoing limitations.” This Board finds that this evidence is “new,” as it was not before VA at the time of the final July 2000 rating decision. More importantly, the Board concludes that this record is relevant, as it implies that the Veteran’s pre-existing low back disability was aggravated, to some extent, during and by his active duty. Thus, the June 2018 statement from Dr. C.M.J.C. record may prove or disprove the Veteran's claim to establish service connection for a low back disability. 

In light of above, readjudication of this claim is warranted; however, as will be discussed below, the Board concludes that a remand is necessary in order to correct a pre-decisional duty to assist error.

2. Entitlement to service connection for a neck disability, diagnosed as a cervical strain

3. Entitlement to service connection for bilateral trapezius strains

As analyzing these issues entails application of identical laws to similar facts, the Board will discuss them together.

In the February 2019 rating decision, the AOJ made two favorable findings with respect to these issues. First, a service treatment record dated January 6, 1992, shows complaints of pain on left side of the Veteran’s neck. Left sternocleidomastoid muscle spasm was diagnosed, given medication, and the Veteran was returned to full duty. Second, an April 2017 VA examination report reflects diagnoses of a cervical strain and bilateral trapezius strains. The Board will accept these findings as favorable to the Veteran in the absence of clear and unmistakable evidence to the contrary.

As the favorable findings, recounted above, suffice the first two elements necessary to establish direct service connection, the crux of the Veteran’s appealed issues is whether these disabilities are related to his service. 

The only medical opinion addressing the matter of medical nexus regarding these disabilities appears to be unfavorable to the Veteran’s appeal. After a review of the complete record and physical examination of the Veteran, the April 2017 VA examiner opined that these disabilities were less likely as not “related to a specific exposure event experienced by the Veteran during service in Southwest Asia.” As rationale for this opinion, the examiner added that the disabilities were “caused by biomechanical forces including overuse and injury.” 

Initially, the Board notes that neither the Veteran nor his private attorney have asserted that these disabilities are due to any in-service exposure incurred while stationed in Southwest Asia; rather, the Veteran asserted that the duties and assignments of his Military Occupational Specialty (MOS) required many hours of labor in a position where his hands were working above his head. This assertion is congruent with the Veteran’s service records. Given this assertion, a closer reading of the examiner’s rationale actually bolsters the Veteran’s contentions that these disabilities are the result of in-service overuse and injury, such as the injury noted in January 1992. There is no evidence to the contrary.

In light of above, the Board finds that service connection for a cervical strain and bilateral trapezius strains is warranted. 38 U.S.C. §§ 1101, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2019).

4. Entitlement to service connection for an acquired psychiatric disability, diagnosed as GAD with panic attacks and MDD

5. Entitlement to service connection for GERD

In a final October 1995 rating decision, the AOJ denied the Veteran’s claims to establish service connection for GERD and an acquired psychiatric disability. In the February 2019 rating decision, the AOJ did not make a favorable finding concerning VA’s receipt of new and relevant evidence since the October 1995 rating decision regarding either previously-denied claim; however, both issues were readjudicated on the merits. As such, despite a lack of a favorable finding on the point, the AOJ has determined that new and relevant evidence has been received which warrants readjudication of these issues. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). Accordingly, the Board need not address this threshold matter regarding these issues. 

As analyzing these issues entails application of identical laws to similar facts, the Board will discuss them together.

In the February 2019 rating decision, the AOJ made several favorable findings with respect to these issues. First, a service treatment record dated April 27, 1994, shows the Veteran’s complaints of a burning sensation in chest with increased heart rate and also dyspnea, and second, a service treatment records dated September 27, 1994, shows that the Veteran was evaluated for panic attacks, which the clinician assessed “rule out history of panic attacks diagnosis now resolved.” Lastly, January 2019 VA examination reports reflect a diagnosis of GERD. GAD with panic attacks and MDD was also diagnosed. The Board will accept these findings as favorable to the Veteran in the absence of clear and unmistakable evidence to the contrary.

As the favorable findings, recounted above, suffice the first two elements necessary to establish direct service connection, the crux of the Veteran’s appealed issues is whether these disabilities are related to his service. There is one medical nexus opinion of record regarding each issue, and the Board will address each issue in turn. 

Regarding the Veteran’s acquired psychiatric disabilities, the January 2019 VA examiner opined that such were less likely as not the result of his service. As rationale for this opinion, the examiner noted that “[T]here is evidence that [the Veteran’s] panic attacks began suddenly while Veteran was sleeping, during military service.” These service records show that there was discussion between medical professionals concerning an interplay between obstructive sleep apnea and panic attacks; however, the examiner stated that that the Veteran’s panic attacks resolved shortly prior to his service separation. Despite this, the examiner noted that, after his service separation, the Veteran began experiencing panic attacks due to other factors (i.e., working with inmates, chronic pain, marital difficulties). The examiner concluded by stating an opinion that, while the Veteran had experienced panic attacks in service and since his separation, his current panic symptoms were unrelated to those that he experienced in service because the causes of such were different. 

As with above, while the Board observes that the thrust of the January 2019 VA examiner’s opinion is unfavorable to the Veteran’s appeal, a closer reading of the stated rationale supports a finding that service connection for GAD with panic attacks and MDD is warranted. Specifically, although the cause of the Veteran’s acquired psychiatric disabilities has changed between his active duty and the present, the fact remains that the Veteran initially experienced psychiatric symptoms meeting the criteria of an acquired psychiatric disability during service, and these symptoms remain active today. In such cases, service connection is warranted. 38 C.F.R. § 3.303(d) (2019). 

Regarding the Veteran’ appeal to establish service connection for GERD, the January 2019 VA examiner opined that such was less likely as not related to the Veteran’s service based on a lack of objective evidence showing continuous symptoms between those noted in service and his current diagnosed disability. While the examiner stated that the Veteran’s lay reports of experiencing GERD symptoms are “subjective only,” the Court has firmly held that Veterans are to be considered competent to report symptoms experienced through their senses, such as heartburn, indigestion, and regurgitation. The Board concludes that the January 2019 opinion is inadequate, and it is afforded no probative weight because it discounts the Veteran’s competent and credible reports of experiencing symptoms associated with GERD during and since service. 

In sum, considering that aspects of the January 2019 unfavorable VA opinion are inadequate and afforded little probative value, the Board observes that the record unambiguously reflects that the Veteran experienced GERD during active duty, he reports similar symptoms since, and he currently meets the criteria for a diagnosis of the disability. In such cases, service connection for the disability is warranted. 38 C.F.R. § 3.303(d) (2019). 

6. Entitlement to service connection for obstructive sleep apnea

In the February 2019 rating decision, the AOJ made two favorable findings with respect to this issue. First, a service treatment record dated July 8, 1994, shows a medical professional making an effort to provide a diagnosis for the Veteran’s in-service symptoms, noting “panic attacks vs. sleep apnea vs. chronic restorative sleep deprivation showing REM depravation symptoms of one week; irritability, body discomfort, and slowed appetite times four months.” Second, a February 2017 VA examination report reflects a diagnosis obstructive sleep apnea. The Board will accept these findings as favorable to the Veteran in the absence of clear and unmistakable evidence to the contrary.

As the favorable findings, recounted above, suffice the first two elements necessary to establish direct service connection, the crux of the Veteran’s appealed issues is whether this disability is related to his service. There are two medical nexus opinions addressing this point, and the Board will discuss them in turn. 

In support of his appeal, the Veteran submitted a June 2016 statement from a private physician, who, after a review of the Veteran’s service treatment records and examination of the Veteran, opined that the July 1994 symptoms and episode experienced by the Veteran was at least as likely as not an initial manifestation of obstructive sleep apnea, although such was not formally diagnosed until 2014. In support of this opinion, the private physician noted that the evidence included statements from service medical professionals and the Veteran’s bunkmate noting that the Veteran’s “erratic breathing while sleeping.” The physician also stated that the in-service testing completed to rule out a diagnosis of sleep apnea (oximetry) was an inadequate test for this purpose. Lastly, the private physician noted that the Veteran’s weight was approximately the same (156 pounds) during his service as when he was diagnosed with obstructive sleep apnea in 2014. 

Despite this favorable evidence, the AOJ obtained a VA medical nexus opinion in February 2017. After a review of the record and a telephone interview with the Veteran, the February 2017 VA examiner opined that the Veteran’s current obstructive sleep apnea was less likely as not related to his episodes of sleep difficulties in service. As rationale for this opinion, the examiner cited the Veteran’s substantial weight gain since his service separation as the cause of his obstructive sleep apnea. Unfortunately, although the June 2016 private opinion was of record at the time of the February 2017 VA examiner’s review of the Veteran’s file, no reference to, or comment on, such was made. 

After reviewing these opinions, the Board concludes that the June 2016 private opinion is afforded more probative weight than the February 2017 VA opinion, as the former cites to specific evidence in the Veteran’s file as rationale. Moreover, the one fact cited by the February 2017 VA examiner as rationale appears to be erroneous, as the Veteran’s weight gain post-dated his initial diagnosis of obstructive apnea. As the probative weight of the favorable June 2016 opinion outweighs that of the unfavorable February 2017 VA examiner, service connection for obstructive sleep apnea is warranted. 38 U.S.C. §§ 1101, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2019).

REASONS FOR REMAND

1. Entitlement to service connection for a low back disability is remanded.

Initially, as discussed above, this appeal warrants readjudication on the merits based on VA’s receipt of new and relevant evidence since the final July 2000 rating decision. Because the AOJ did not find that new and relevant evidence was received, the AOJ has not yet adjudicated the claim on the merits. Thus, a remand for initial adjudication on the merits is necessary, as the Board is prevented from doing so in the first instance. Indeed, the Veteran has a procedural right to have one review of his appeal by the Secretary under 38 U.S.C. § 7104 (a), and AMA amendments do not specifically revoke that right.

Further, the Veteran’s service treatment records show that he was diagnosed with lumbarization at S1 upon x-ray testing at his service entrance examination, and there is evidence that the rigors of his service may have worsened this condition. Unfortunately, there is no evidence regarding whether this noted condition is a congenital defect or disease – which is an important distinction, as the controlling VA laws, recounted above, provide that different medical opinions are necessary to substantiate claims to establish service connection for each. 

With the above facts in mind, the Board finds that the medical matters forming the crux of the Veteran’s appeal are beyond the purview of the Board and the AOJ. In such situations, VA’s duty to assist provides that medical opinions addressing these matters must be obtained. The fact that this was not undertaken prior to the February 2019 rating decision represents a pre-decisional duty to assist error that must be corrected on remand.

2. Entitlement to service connection for radiculopathy of the left leg, to include as secondary to a low back disability, is remanded.

3. Entitlement to service connection for radiculopathy of the right leg, to include as secondary to a low back disability, is remanded.

As discussed above, the Board must remand the Veteran’s appeal seeking to establish service connection for a low back disability, and thus, these intertwined issues must also be remanded.

Further, while the record includes the Veteran’s competent and credible reports of leg pain and x-ray and magnetic resonance imaging (MRI) results showing foraminal narrowing of the Veteran’s lumbar vertebrae, no testing has been performed to confirm or rule out a diagnosis of radiculopathy affecting either leg, or the etiology of such. 

As with above, the medical matters forming the crux of the Veteran’s appeal are beyond the purview of the Board and the AOJ. In such situations, VA’s duty to assist provides that medical opinions addressing these matters must be obtained. The fact that this was not undertaken prior to the February 2019 rating decision represents a pre-decisional duty to assist error that must be corrected on remand.

The matters are REMANDED for the following actions:

1. The AOJ must request that the Veteran be scheduled for a VA examination to determine the nature and etiology of his current low back disability and radiculopathy of the legs. Following review of the complete electronic file, to include this remand, and the completion of any necessary testing, the examiner is asked to address the following: 

a. Whether any diagnosed low back disability was at least as likely as not (50 percent probability or greater) incurred in the Veteran's active service, or is otherwise etiologically related to his active service.

b. Whether the lumbarization at S1 noted on the Veteran’s service entrance examination report should be considered a "disease" or "defect" in accordance with VA law. The examiner must acknowledge and accept that for legal purposes, a disease is a condition capable of improving or deteriorating, whereas a defect is a condition not capable of improving or deteriorating.

c. If it is determined that the Veteran’s lumbarization at S1 was a congenital defect, the examiner must opine as to whether there was any superimposed disorder during the Veteran's active duty service.

d. If it is determined that the Veteran’s lumbarization at S1 was a congenital defect, the examiner must opine as to whether it is at least as likely as not (50 percent probability or greater) that such disease was aggravated beyond its natural progression by the Veteran's active duty service.

e. Confirm or rule out a diagnosis of radiculopathy of either leg.

f. If a diagnosis of radiculopathy is confirmed regarding either leg, provide an opinion concerning whether such is at least as likely as not proximately due to, or the result of, any incident of the Veteran’s service.

g. If a diagnosis of radiculopathy is confirmed regarding either leg, provide an opinion concerning whether such is at least as likely as not caused or aggravated by the Veteran’s low back disability.

The examiner must explain the rationale for all opinions given, citing to supporting factual data and medical literature as deemed appropriate. 

In rendering the requested opinions, the physician should specifically consider and discuss the Veteran's contentions, lay statements of record, and medical records regarding the conditions and experiences in service and their effect on the Veteran. The examiner must be informed that the Board accepts as credible the Veteran's assertions with respect to his in-service experiences.

If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so, and must state whether there is additional evidence that would permit the necessary opinion to be made. 

2. Thereafter, the Veteran’s appealed issues must be readjudicated by the AOJ. As the Board has found that new and relevant evidence has been received in support of the Veteran's previously-denied claim to establish service connection claim for a low back disability, the AOJ must readjudicate this appeal on the merits. 

 

 

Michael J. Skaltsounis

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Scott W. Dale, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.